172 P.3d 361 (2007)
STATE of Washington, Respondent,
v.
Roy Wayne RUSSELL, Jr., Appellant.
No. 34424-6-II.
Court of Appeals of Washington, Division 2.
November 14, 2007.
Michael C. Kinnie, Vancouver, WA, for Respondent.
Thomas Michael Kummerow, Washington Appellate Project, Seattle, WA, for Appellant.

PUBLISHED IN PART OPINION
BRIDGEWATER, J.
¶ 1 Roy Wayne Russell, Jr. appeals his conviction for second degree murder of 14-year-old C.M.H. We hold that the trial court *362 did not violate Russell's constitutional right to public trial when it prohibited the media from photographing juvenile witnesses without consent because there was no closure of the courtroom in any sense under State v. Bone-Club, 128 Wash.2d 254, 906 P.2d 325 (1995). Russell's other claims are meritless under prior case law from our Supreme Court: he did not have the right to have a jury decide the fact that he had prior convictions, nor did he have the right to have that issue decided beyond a reasonable doubt; and the Persistent Offender Accountability Act (POAA) does not violate the single subject requirement of the Washington State Constitution. Russell's claims in his Statement of Additional Grounds (SAG)[1] are meritless as well. We affirm.

Facts
¶ 2 On December 9, 2005, the State charged Roy Russell with one count of second degree felony murder under RCW 9A.32.050(1)(b); RCW 9A.36.021.[2] The information alleged that Russell caused the death of C.M.H., who was found in the basement of his Clark County home.
¶ 3 Before trial, the State raised its concerns about media coverage of the case. The trial court decided that the broadcast media could operate a pool camera in the courtroom but that it would not allow photographs of the jury, under the bench-bar rules. In addition, the trial court decided that the print media could not photograph juvenile witnesses. The court specified that the media could report on and even record the voices of juvenile witness testimony, but that it could not photograph such witnesses and put their images in the press. The trial court also prohibited the pooled television camera from being pointed at the juvenile witnesses during their testimony.
¶ 4 Following its preliminary ruling, the trial court invited arguments from the print media and the parties. At a hearing held on January 4, 2006, the editor of a local newspaper argued that if the trial court denied the press the opportunity to photograph juvenile witnesses, it would deny the public its right to an open courtroom. Following an extended discussion with the editor and counsel about the competing interests at stake, the trial court affirmed its previous decision that it would not allow the press to photograph juvenile witnesses. But the trial court also stated that it was "not closing the door to the subject." 2 RP at 148.
¶ 5 On January 6, 2006, the trial court revisited the issue of photographing juvenile witnesses and it "slightly adjust[ed]" its original decision. 3 RP at 154. Ultimately it decided that it would permit the press to photograph juvenile witnesses only if the witness and his or her parents agreed to the press taking photographs. Thereafter, the trial court and the press coordinated their efforts to identify which witnesses agreed to being photographed and which did not.
¶ 6 On January 24, 2006, a jury convicted Russell as charged. At sentencing, the trial court found by a preponderance of the evidence that Russell had two prior convictions "of the most serious offense[]" thereby qualifying him as a persistent offender under the Persistent Offender Accountability Act enumerated in RCW 9.94A.570. CP at 431. Following the POAA, the trial court sentenced Russell to life in prison without the possibility of parole. Russell timely appeals.

ANALYSIS

Public Trial
¶ 7 Russell first contends that the trial court violated his right to a public trial when it prohibited the press from photographing the juvenile witnesses without their consent at trial. The State maintains that the trial court did not even entertain the concept of closing the courtroom or denying the defendant his constitutional right to a public trial. The State is correct.
¶ 8 Whether a trial court has violated a criminal accused's right to public trial is *363 an issue of law, subject to de novo review. State v. Easterling, 157 Wash.2d 167, 174, 137 P.3d 825 (2006) (citing Bone-Club, 128 Wash.2d at 256, 906 P.2d 325). The presumptive remedy for such violation is reversal and remand for new trial. In re Personal Restraint of Orange, 152 Wash.2d 795, 814, 100 P.3d 291 (2004).
¶ 9 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution each guarantee a criminal accused the right to a public trial. Cohen v. Everett City Council, 85 Wash.2d 385, 387, 535 P.2d 801 (1975). In addition, article I, section 10 of the Washington Constitution states that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." This provision provides the public and press a right to open and accessible court proceedings. Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 36, 640 P.2d 716 (1982). "The public trial right serves to ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward, and discourage perjury." State v. Brightman, 155 Wash.2d 506, 514, 122 P.3d 150 (2005) (citations omitted).
¶ 10 Although the right to public trial is not absolute, protection of this basic constitutional right clearly requires a trial court "to resist a closure motion except under the most unusual circumstances." Bone-Club, 128 Wash.2d at 259, 906 P.2d 325. To protect the constitutional right to a public trial, the trial court may not close a courtroom without first considering the five requirements enumerated in Bone-Club and second, entering specific findings to justify the closure order. Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325 (citations omitted).
¶ 11 Russell equates the trial court's prohibition on photographing the juvenile witnesses without consent to a complete closure of the courtroom. He then implies that the trial court failed to consider the Bone-Club factors and enter specific findings to justify the closure. See Bone-Club, 128 Wash.2d at 258-59, 906 P.2d 325 (citations omitted).
¶ 12 In Bone-Club, the trial court cleared and closed the courtroom during a pretrial suppression hearing at the State's unexplained request. Bone-Club, 128 Wash.2d at 256-59, 906 P.2d 325. The Washington Supreme Court held that the trial court erred when it failed to consider five factors and made a record before ordering the complete closure. Bone-Club, 128 Wash.2d at 258-59, 261, 906 P.2d 325 (emphasis added); see also Orange, 152 Wash.2d at 808, 100 P.3d 291 (emphasizing that the trial court erred because it failed to engage the Bone-Club analysis before permitting a full closure of the proceedings) (emphasis added).
¶ 13 But here, the trial court never completely closed the courtroom. It never prevented any person from entering the courtroom or removed any person from the courtroom. It merely ordered that the press not photograph juvenile witnesses without consent from the juvenile witness and/or the witness's parents. The trial court's prohibition on photographing minor witnesses without consent cannot even be considered akin to a partial closure.
¶ 14 In State v. Gregory, the Supreme Court distinguished between full closures and temporary, partial closures of the courtroom. State v. Gregory, 158 Wash.2d 759, 815-16, 147 P.3d 1201 (2006). There, Gregory argued that the trial court violated his right to public trial when it required his aunt to leave the courtroom during his grandmother's testimony. Gregory, 158 Wash.2d at 815, 147 P.3d 1201. The Supreme Court distinguished Brightman, Orange, and Bone-Club, emphasizing that those cases involved full closures of the courtroom; whereas Gregory involved the exclusion of one person from the courtroom for a limited time. Gregory, 158 Wash.2d at 816, 147 P.3d 1201. Finally, the Gregory court concluded that the trial court did not abuse its broad discretion to regulate the conduct of the trial because it explained its reason for excluding the defendant's aunt, offered the defendant the opportunity to object, and limited the exclusion to a particular witness's testimony. Gregory, 158 Wash.2d at 816, 147 P.3d 1201.
¶ 15 Similarly, Russell's claim fails because the trial court never fully closed the courtroom; rather, it merely ordered that the press not photograph the juvenile witnesses *364 without their permission. The trial court explicitly explained its reasons for prohibiting the press from photographing juvenile witnesses, stating that the cameras "could dampen [the juvenile witnesses'] ability to report on the facts. It could dampen their ability to speak." 2 RP at 129. The trial court later stated that allowing the press to photograph the juvenile witnesses "had the potential to have an adverse impact on the children's ability to testify. And I always want my jurors to have a complete picture." 3 RP at 152. Moreover, it is of particular importance to note that the trial court did not prohibit the media from recording the juvenile witnesses' testimony so long as they did not point the camera at the juvenile witnesses. Therefore, the trial court did not violate Russell's right to a fair and open trial. Because there was no closure in any sense, and certainly not a full closure at any time, we decline to discuss whether the trial court complied with the Bone-Club standards. We do however discuss the standards set forth in General Rule 16.
¶ 16 Russell contends that the trial court "failed to comply with GR 16 in any manner." Br. of Appellant at 12. Specifically, he contends that "[t]he court failed to presume open access of the courtroom." Br. of Appellant at 12. Russell's argument is patently wrong.
¶ 17 Under GR 16, broadcasting, televising, recording, and taking photographs in the courtroom are permissible, subject to the trial court's permission and conditions, and provided the media personnel do not distract the participants or impair the dignity of the proceedings. GR 16; 13 Royce A. Ferguson, Jr., Washington Practice: Criminal Practice and Procedure with Forms § 4307, at 234 (3d ed.2004). Under GR 16(c), a trial court may limit courtroom photography if it makes particularized findings to support its decision. In making these findings, the trial court must presume open access, it shall hear from any party before imposing limitations, and shall explain its reasons supporting limitations on photography and how they relate to the specific circumstances of the case. GR 16(c)(1)-(3).
¶ 18 Here, the record clearly shows that the trial court complied with the GR 16 requirements. First, it made particularized findings to support its decision to limit photographing juvenile witnesses, repeatedly stating that it was concerned with cameras hindering the juvenile witnesses' ability to testify. Furthermore, there is no doubt that the trial court based its decision on the presumption of an open courtroom because it repeatedly indicated that his ruling would not infringe on the ability of the public to be aware of the courtroom proceedings. In addition, it held a special hearing to allow members of the media to voice concerns about the ruling. Finally, the trial court supported the limitation on photographing the juvenile witnesses on the specific circumstances of the case. Namely, the record shows that the trial court was cognizant of the sensitive and possibly embarrassing subject matter to which the juvenile witnesses would testify. Its primary concern was that the juvenile witnesses would be able to provide accurate testimony of the facts and circumstances of the case.
¶ 19 The trial court also considered the ethical standards of the press in regard to publishing images of the juvenile witnesses; ethical and legal standards to protect juveniles in order to minimize harm; and the First Amendment and rights of the press. And, the trial court ensured that the restriction was no broader in its application or duration than necessary. The trial court never closed the courtroom to the public; the pool camera was always recording the proceedings; and all media had free access to the courtroom for all purposes including recording all of the testimony. The only restriction the trial court placed on the media was that the press could not photograph the juvenile witnesses without prior permission from the witnesses and their parents. The court went out of its way to establish a procedure by which it would alert the press to the juvenile witnesses that granted such permission.
¶ 20 Therefore, based on the record, we hold that the trial court balanced the interests of the defendant's right to a public trial together with its abilities to control the *365 courtroom photography under GR 16. Further, the trial court is to be commended for its thorough and careful balancing of all interests. Thus, the trial court acted within its discretion in limiting photography of juvenile witnesses under GR 16.
¶ 21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: HOUGHTON, C.J., and PENOYAR, J.
NOTES
[1] RAP 10.10.
[2] In the alternative, the State charged Russell with one count of second degree murder under RCW 9A.32.050(1)(a) or one count of first degree manslaughter under RCW 9A.32.060(1)(a).