[No. 36625-8-II.   Division Two.   January 27, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. ERIC D. WISE, *Appellant*.

426

428

*Andrew P. Zinner* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Gary P. Burleson, Prosecuting Attorney,* and *Edward P. Lombardo, Deputy,* for respondent.

¶1 QUINN-BRINTNALL, J. — A jury found Eric D. Wise guilty of second degree burglary and first degree theft. He argues that the trial court violated his federal and state constitutional right to an open trial, as well as the public's state right to an open trial, when it conducted portions of voir dire in the trial judge's chambers without first conducting a *Bone-Club*[1] analysis. Because Wise waived any objection to the questioning of jurors who asked to be questioned privately in the judge's chambers and because Wise lacks standing to assert the public's right to an open trial, we affirm.

## FACTS

¶2 Wise was charged with second degree burglary and first degree theft in connection with the April 5, 2007 break-in of the Lake Limerick Mini Mart.[2] During jury selection, the trial court read a list of potential witnesses and gave the venire an opportunity to raise numbered cards if anyone knew a particular witness. Seven potential jurors were acquainted with at least one witness. As a follow-up question, the trial court asked whether "the fact that you're acquainted with some of these [potential witnesses] would make it difficult for you to hear this case fairly." Suppl. Report of Proceedings (RP) (June 26, 2007) at 6. Four venire persons answered affirmatively. The trial court then asked if any potential jurors had been burglarized in the past or knew someone who had been burglarized. Four of the jurors answered affirmatively. The trial court also asked if any jurors had relatives or close friends in law enforcement; 19 answered affirmatively. Three jurors answered affirmatively when asked whether their acquaintance with some-

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

[2] Wise and his friends broke into the Mini Mart with a crowbar or similar instrument and stole several items, including lottery tickets, cigarettes, and change from two cash registers. Police caught the group when two members attempted to cash in some of the lottery tickets the next day. Two of the group members testified against Wise at trial.

one in law enforcement would "make it difficult for you to sit as a fair juror in this case." Suppl. RP (June 26, 2007) at 8.

¶3 The trial court then posed a series of additional questions to the group, with the venire members answering affirmatively by holding up numbered cards. Before this questioning, the trial court stated, "[I]f there is anything . . . that is sensitive and you don't want to speak about it in this group setting[, j]ust let us know. I make a list on my notebook and we take those jurors back into chambers so that we can ask those questions more privately." Suppl. RP (June 26, 2007) at 11-12. Although there is nothing on the record indicating that either party requested private questioning of jurors, neither the State nor Wise objected to this process.

¶4 After this group questioning, the trial court directly questioned particular venire members. The judge prefaced each question with "are you comfortable telling me . . . here or would you like to go to chambers[?]" Suppl. RP (June 26, 2007) at 13. Juror 43 requested that he be questioned in chambers. The trial court then stated, "At this time, we are going to take a number of jurors into chambers and begin a question - a series of questions there. We'll start with Juror No. 43 and then, if counsel will approach, I'll get the numbers for the other jurors." Suppl. RP (June 26, 2007) at 20-21. The trial judge, Wise, his counsel, the prosecutor, and the court reporter went into chambers to question eight potential jurors who had requested that they be questioned privately.

¶5 In chambers, but on the record, the trial court asked prospective jurors about health problems, time constraints, and their relationships with witnesses and law enforcement officials. Upon returning to the courtroom, voir dire continued and the trial court gave the parties each an opportunity to ask specific questions of the potential jurors. During this questioning, one prospective juror requested to speak in chambers. The trial court also called an additional juror into chambers to ask about a response on her questionnaire concerning her history of criminal convictions.

The trial court, parties, and court reporter moved to chambers for this questioning as well and returned to the courtroom to complete jury selection.

¶6 All individual questioning took place on the record. Once the trial court and both parties finished questioning the venire, the parties exercised peremptory challenges. At the end of voir dire, the State had one remaining peremptory challenge and Wise had two remaining peremptory challenges.

¶7 The jury found Wise guilty of second degree burglary and first degree theft. The court sentenced him to 57 months and 22 months in prison, respectively. He now appeals.

ANALYSIS

¶8 Wise argues that he is entitled to a new trial because the trial judge failed to sua sponte conduct a *Bone-Club* analysis before closing the courtroom during jury selection. Wise urges this court to reject Division One's holding in *State v. Momah*, 141 Wn. App. 705, 171 P.3d 1064 (2007), *review granted in part*, 163 Wn.2d 1012 (2008), that only an express order to close the courtroom constitutes a closure requiring application of *Bone-Club*, and asks that we follow Division Three's holdings in *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007), and *State v. Duckett*, 141 Wn. App. 797, 173 P.3d 948 (2007).

¶9 The State argues that the trial court never closed the courtroom and that a *Bone-Club* analysis was unwarranted. The State also urges us to reject Division Three's holding in *Duckett* that "individual juror questioning in-chambers violates a defendant's public trial rights" and argues that *Duckett* ignores juror privacy rights and "[Health Insurance Portability and Accountability Act of 1996 (HIPAA), 42 U.S.C. § 1320d] for any jurors that have medical concerns." Br. of Resp't at 4-5.

STANDARD OF REVIEW

■ ■ ¶10 The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to a public trial. *State v. Russell*, 141 Wn. App. 733, 737-38, 172 P.3d 361 (2007), *review denied*, 164 Wn.2d 1020 (2008). Additionally, article I, section 10 of the Washington Constitution states, "Justice in all cases shall be administered openly," giving the public, in addition to the defendant, a right to open proceedings. *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36, 640 P.2d 716 (1982).

■ ¶11 We review de novo whether a trial court has violated the right to a public trial. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005). And we presume prejudice where the court proceedings violate this right. *Bone-Club*, 128 Wn.2d at 257. The jury selection proceedings fall "within the ambit of the right to a public trial." *State v. Erickson*, 146 Wn. App. 200, 208, 189 P.3d 245 (2008) (citing *Brightman*, 155 Wn.2d at 511, 515; *Bone-Club*, 128 Wn.2d at 259-60). Therefore, *Bone-Club* appears to require a finding of necessity on the record before conducting voir dire in chambers just as it does before closure of trial proceedings. *Erickson*, 146 Wn. App. at 208. The remedy for a trial court's failure to follow *Bone-Club* is to reverse and remand for a new trial. *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 814, 100 P.3d 291 (2004).

*BONE-CLUB* ANALYSIS NOT WARRANTED

¶12 Protection of the right to public trial requires a trial court "to resist a closure motion except under the most unusual circumstances." *Bone-Club*, 128 Wn.2d at 259. It also provides that a trial court may close a courtroom only after considering the five requirements enumerated in *Bone-Club* and entering specific findings on the record to justify the closure order. 128 Wn.2d at 258-59. The *Bone-Club* factors "assure careful, case-by-case analysis of a closure motion" and consist of the following five determinations:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)). A trial court's failure to undertake the *Bone-Club* analysis, which directs the trial court to allow anyone present an opportunity to object to the closure, undercuts the guaranties enshrined in both article I, section 10 as well as article I, section 22. 128 Wn.2d at 258-59.

¶13 In *Bone-Club*, the State requested closure of the courtroom during an undercover police officer's testimony at the pretrial suppression hearing. The trial court cleared the entire courtroom for the officer's testimony during the pretrial suppression hearing. *Bone-Club*, 128 Wn.2d at 256-57. The defendant was not given an opportunity to object to the closure. *Bone-Club*, 128 Wn.2d at 257. The Washington Supreme Court found that "the temporary, full closure of [the] pretrial suppression hearing" was a violation of the defendant's right under article I, section 22 of the Washington Constitution. *Bone-Club*, 128 Wn.2d at 256. The court further found that the defendant's "failure to object contemporaneously did not effect a waiver" and that the closure requirements are triggered by the motion to close, not by a defendant's objection. *Bone-Club*, 128 Wn.2d at 257, 261. But here, unlike in *Bone-Club*, there was no

motion or request to close the courtroom and no order closing the courtroom was ever made.

¶14 We acknowledge that the Washington Supreme Court specifically considered the issue of closure during voir dire in *Orange*. The trial court in *Orange* questioned all members of the venire in chambers on their answers to eight particular juror questionnaire questions. 152 Wn.2d at 801. The trial court also prohibited the defendant's and the victim's families from watching the courtroom voir dire because of space constraints in the courtroom, stating, " 'I am ruling no family members, no spectators will be permitted in this courtroom during the selection of the jury because of the limitation of space, security, etcetera. That's my ruling.' " *Orange*, 152 Wn.2d at 802 (emphasis omitted) (alteration in original).

¶15 The Washington Supreme Court held that the trial court "ordered a permanent, full closure of voir dire," thereby exceeding the *Bone-Club* threshold of "a 'temporary, full closure.' " *Orange*, 152 Wn.2d at 807-08 (quoting *Bone-Club*, 128 Wn.2d at 257. The court found that, because there had been a closure and because the trial court failed to conduct the *Bone-Club* analysis, Orange's constitutional right to a public trial had been violated. *Orange*, 152 Wn.2d at 811. Finally, the court held that Orange's remedy for the violation of his right to a public trial was remand for a new trial. *Orange*, 152 Wn.2d at 814.

¶16 In *Brightman*, neither party requested the courtroom closure. 155 Wn.2d at 511. The trial court closed the courtroom to spectators during voir dire, stating, " 'In terms of observers and witnesses, we can't have any observers while we are selecting the jury, so if you would tell the friends, relatives, and acquaintances of the victim and defendant that the first two or three days for selecting the jury the courtroom is packed with jurors, they can't observe that.' " *Brightman*, 155 Wn.2d at 511. Neither party objected to this statement. *Brightman*, 155 Wn.2d at 511. The Washington Supreme Court held that "the defendant's failure to object at trial to the courtroom closure 'did not

effect a waiver,' " *Brightman*, 155 Wn.2d at 514, and that "once the plain language of the trial court's ruling imposes a closure," there is a "strong presumption that the courtroom was closed." *Brightman*, 155 Wn.2d at 516.

■■ ¶17 In the present case, the record shows that, at the prospective jurors' request, a portion of voir dire questioning took place in chambers. Neither party requested the chambers questioning or objected to the process, and our review of the record demonstrates that neither party was prejudiced by the process; in fact, both appear to have benefited from the prospective jurors' candid answers, some of which would have tainted the entire venire if stated in open court. The trial court individually questioned only 10 potential jurors in chambers, while the rest of the jury remained in the courtroom. The trial court did not order a closure of the courtroom itself, and we presume the courtroom and the proceedings conducted there remained open. The court reporter was present in chambers during questioning, as were all parties, and our record contains a full transcript of the proceedings. Closure, if any, was temporary and partial, below the "temporary, full closure" threshold of *Bone-Club*. *See State v. Gregory*, 158 Wn.2d 759, 815-16, 147 P.3d 1201 (2006). We, therefore, hold that the trial court was not required to sua sponte conduct a *Bone-Club* analysis prior to this temporary relocation of voir dire to chambers for the purpose of asking prospective jurors sensitive questions.

## WISE HAS NO BASIS TO APPEAL HIS CONVICTION

¶18 Even assuming the trial court improperly closed the courtroom, we hold that Wise is not entitled to a new trial on that basis because (1) he waived his own public trial right and (2) he lacks standing to defend the public's right to an open trial under article I, section 10 of the Washington Constitution.[3] We, therefore, affirm Wise's conviction.

[3] We note the Division Three holding in *Duckett*, which expressly rejected a similar standing argument. 141 Wn. App. at 804. Division Three determined that

A.  WISE WAIVED HIS OWN RIGHT TO AN OPEN TRIAL

¶19  Wise argues that the closure of the courtroom violated both the Sixth Amendment to the federal constitution, and article I, section 22 of the Washington Constitution, which protect a defendant's own right to a public trial. Wise cannot appeal the trial court's decision based on his own right to an open trial because Wise waived this right at trial.

■  ¶20  A defendant may waive certain constitutional rights through his conduct without ever expressly waiving them on the record. *See State v. Thomas*, 128 Wn.2d 553, 559, 910 P.2d 475 (1996). In *Thomas*, the Washington Supreme Court determined that a defendant may waive his right to testify through his conduct; there is no requirement that "the trial court . . . obtain an on-the-record waiver of the right." 128 Wn.2d at 559. The court explained that, while certain fundamental constitutional rights—including the right to testify—must be waived "knowingly, voluntarily, and intelligently," there is no requirement that such rights be waived on the record. *Thomas*, 128 Wn.2d at 558-59. The court also found no requirement that trial courts "inform a defendant of [his testimonial] right." *Thomas*, 128 Wn.2d at 558 (citing various federal court decisions holding the same).

■  ■  ¶21  We hold that a defendant's conduct may similarly waive his right to have all voir dire questions conducted in open court, even without an express explanation of the public trial right by the trial court. And we hold that Wise waived his right to ask prospective jurors sensi-

---

the trial court has an "independent obligation to safeguard the open administration of justice." *Duckett*, 141 Wn. App. at 804. We also take note of a decision from this division, *Erickson*, in which the majority responded to the dissent's argument:

> The dissent suggests that Erickson lacks standing to invoke the public's right to a public trial. The dissent further states that Erickson's interest in full candor during questioning conflicts with the public's interest in open proceedings, and thus he cannot "fairly represent the public's interests in exercising its public trial rights" under article I, section 10. We disagree.

146 Wn. App. at 206 n.2 (citations omitted).

tive personal questions in public in this case. This is because not only did Wise not object at trial,[4] but also because his counsel actively engaged in the private questioning of the prospective jurors. Indeed, Wise benefited from the private questioning and successfully requested that four privately questioned jurors be excused for cause after their answers revealed bias or prior negative contact with prospective defense witnesses. Wise, therefore, waived his right to ask prospective jurors sensitive personal questions in public and cannot now be heard to complain that his constitutional right to an open trial was prejudicially violated as a result.

B.  There Is No Structural Error

¶22 Our Supreme Court has thus far treated denial of public trial right for full, temporary courtroom closures (which did not occur here) as if it were structural error, i.e., not subject to harmless error and not requiring the defendant to timely object in order to preserve the issue for appeal. But such treatment is inconsistent with controlling Sixth Amendment jury selection authority. *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). We believe that conducting voir dire on the record, in chambers, with the defendant and all counsel present— such as presented in this case—is not a structural error that undermines the integrity of the verdict rendered by a fair and impartial jury. Accordingly, a timely objection to such voir dire is required to preserve the issue for appeal and, absent a showing of prejudice, retrial before another fair and impartial jury is not required. *Cf. Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984) (full closure of suppression hearing on State's motion to close was structural error).

---

[4] We note that a mere failure to object, without additional conduct, has been held not to constitute waiver. *See Brightman*, 155 Wn.2d at 514 ("the defendant's failure to object at trial to the courtroom closure 'did not effect a waiver' "); *Bone-Club*, 128 Wn.2d at 257 ("[d]efendant's failure to object contemporaneously did not effect a waiver" (citing *State v. Marsh*, 126 Wash. 142, 146-47, 217 P. 705 (1923))).

¶23 "Structural errors are those which create 'defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *In re Det. of Kistenmacher*, 163 Wn.2d 166, 185, 178 P.3d 949 (2008) (Sanders, J., concurring in part, dissenting in part) (alteration in original) (internal quotation marks omitted) (quoting *Neder v. United States*, 527 U.S. 1, 8, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). "'Structural errors . . . are not subject to harmless error review.'" *Kistenmacher*, 163 Wn.2d at 185 (Sanders, J., concurring in part, dissenting in part) (alteration in original) (quoting *State v. Frost*, 160 Wn.2d 765, 779, 161 P.3d 361 (2007), *cert. denied*, 128 S. Ct. 1070 (2008)). Examples of structural errors include the absence of counsel for a criminal defendant, a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and admission of a defendant's coerced statements or confessions. *See State v. L.B.*, 132 Wn. App. 948, 954 n.2, 135 P.3d 508 (2006) (citing *Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). As the Supreme Court recently reiterated:

> "[M]ost constitutional errors can be harmless. [I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error "necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence."

*Washington v. Recuenco*, 548 U.S. 212, 218-19, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (some alterations in original) (footnote omitted) (internal quotation marks omitted) (quoting *Neder*, 527 U.S. at 8, 9).

¶24 In the context of jury selection, the right to a public trial is not structural error unless the defendant makes a prima facie showing of the alleged jury selection defect at trial and the trial court fails to correct the discriminatory

jury selection process. *Batson*, 476 U.S. 79; *State v. Hicks*, 163 Wn.2d 477, 181 P.3d 831, *cert. denied*, 129 S. Ct. 278 (2008). Although *Batson* errors are structural, absent a showing of prejudice they cannot be raised for the first time on appeal. To preserve the issue, the defendant must present the trial court with a prima facie showing that the prosecution is unlawfully excluding prospective jurors on the basis of race or gender and the State must then be given an opportunity to rebut the allegations. *Batson*, 476 U.S. at 93-94; *United States v. Gordon*, 974 F.2d 97, 100 (8th Cir. 1992); *State v. Wright*, 78 Wn. App. 93, 896 P.2d 713, *review denied*, 127 Wn.2d 1024 (1995).

¶25 As in the *Batson* context, when no prejudice appears on the record, it is proper to require a defendant or a representative of the public, such as a citizen or a newspaper, to bring an alleged Sixth Amendment public trial right violation to the trial court's attention for immediate correction. Applying *Bone-Club*, as Wise urges, to vacate the verdict of an impartial jury simply because, without objection, the trial court granted potential jurors' requests that they be questioned in chambers, on the record, with the defendant and counsel present is inconsistent with the handling of other, arguably more serious, challenges to the integrity of the jury selection process.

¶26 Indeed, in the *Batson* context, a trial court judge may require the prosecutor to answer the issue of discriminatory jury selection on its own motion only if the facts appearing in the record support a prima facie case of discrimination. *State v. Evans*, 100 Wn. App. 757, 767, 998 P.2d 373 (2000). But even a *Batson* query is a discretionary decision for the trial court judge and is not required because, with the benefit of hindsight, an appellate court discovers potential error. *Evans*, 100 Wn. App. at 767. Allowing a defendant to request or acquiesce in private voir dire, or to merely sit by idly at trial and then, on appeal, claim an error for an alleged jury selection challenge, imposes additional duties on the trial court that run counter to case law governing other jury selection issues.

¶27 Here, no one challenged the jury selection process or raised the issue of the right to public trial to the trial court. No party made a motion to close the courtroom, and the judge did not sua sponte move to close the courtroom. Thus, our record lacks two elements that would trigger the structural error doctrine in other jury selection matters. First, there was no timely prima facie showing by a party that the court was closing. Second, the trial court did not have before it a closure motion. Such a closure motion triggers the trial court's duty to conduct the *Bone-Club* analysis and triggers the parties' duty to timely object to closure before the court acquiesced in prospective jurors' requests for slight privacy in answering personal questions on the record, with the defendant and counsel present but out of public view. Accordingly, the trial court's error in failing to conduct a *Bone-Club* analysis on the record may be harmless and Wise is entitled to a new trial only if the jury selection process prejudiced his right to a fair and impartial jury. Wise has not shown that he was prejudiced by the process of selecting the fair and impartial jury in this case, and the constitution does not require that we vacate that jury's verdict and remand for a new trial.

C. Wise Lacks Standing To Defend Public's Right under Article I, Section 10

¶28 Wise also argues that the trial court violated article I, section 10 of the Washington Constitution, which protects the public's right to open proceedings. But Wise cannot appeal on the grounds of the public's right to an open trial because he lacks standing.

¶29 The standing doctrine generally prohibits a party from defending the rights of another person. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 138, 744 P.2d 1032, 750 P.2d 254 (1987), *appeal dismissed*, 488 U.S. 805 (1988). Article I, section 10 of the Washington Constitution gives the *public* the right to the open administration of justice. *Bone-Club*, 128 Wn.2d at 259.

¶30 Article III of the federal constitution requires that any litigant possess standing. *Arizonans for Official En-*

*glish v. Arizona*, 520 U.S. 43, 64, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997). Standing requires "(1) that the plaintiff have suffered an 'injury in fact' . . . ; (2) that there be a causal connection between the injury and the conduct complained of . . . ; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 167, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

¶31 There is a "general prohibition on a litigant's raising another person's legal rights." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). "[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, [the United States Supreme Court] has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). A plaintiff may raise the rights of another person only when "(1) the party asserting the rights has suffered an injury in fact, giving him a sufficiently concrete interest in the outcome of the litigation, (2) there is a sufficiently close relationship between the litigant and the person whose rights are being asserted so that the litigant will be an effective proponent of the rights being litigated, and (3) there is some hindrance to the third party's ability to protect his own interests." *United States v. De Gross*, 960 F.2d 1433, 1437 (9th Cir. 1992) (citing *Powers v. Ohio*, 499 U.S. 400, 410-15, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)); *see also Ludwig v. Dep't of Ret. Sys.*, 131 Wn. App. 379, 385, 127 P.3d 781 (2006); *Mearns v. Scharbach*, 103 Wn. App. 498, 511, 12 P.3d 1048 (2000), *review denied*, 143 Wn.2d 1011 (2001).

¶32 Wise does not meet the requirements for third party standing to assert a violation of the public's open trial right. Wise does not point to any injury caused by private voir dire. More importantly, Wise does not have a "sufficiently

close relationship" to the public open trial right. He was the defendant and not an observer in this case, and the trial court did not bar him from the juror questioning it conducted on the record in chambers. Additionally, Wise's interests on appeal are starkly different than the interests of the public: Wise benefited from the private questioning because it allowed jurors to be more forthcoming; whereas the public's interest was in observing the proceedings, Wise's interest was on getting accurate private personal information. We do not determine here what parties might have standing to allege a violation of article I, section 10 on the public's behalf, but hold only that Wise himself does not have standing to do so.

ADDITIONAL CONSIDERATIONS: VIOLATION OF HIPAA AND TAINTING OF JURY POOL

¶33  The State also argues that the court's requiring potential jurors to publicly answer questions regarding their health violates HIPAA. The State also notes that requiring potential jurors to answer questions on sensitive issues in front of the venire violates the jurors' constitutional right to keep personal matters private from the government. *See* WASH. CONST. art. I, § 7. Wise acknowledges that the trial court conducted questioning in chambers in order to "facilitate privacy." Reply Br. of Appellant at 3. He argues, however, that "[p]ersonal embarrassment does not trump [the public trial] right." Reply Br. of Appellant at 4. He further argues that the jurors "obviously consented to sharing medical information" since "[n]either the court nor the parties compelled the prospective jurors to reveal anything about their medical conditions." Reply Br. of Appellant at 4. We disagree with Wise that a jury summons negated a Washington citizen's privacy right. The prospective jurors were compelled to come to court by summons. RCW 2.36.095. If they had failed to respond to the summons, they would have committed a criminal offense. RCW 2.36.170. Moreover, once they had appeared at the courthouse for jury duty, they were required to take an oath and

were subject to potential perjury charges if found to have lied in answers to the questions posed by the court and counsel. CrR 6.6.

¶34  HIPAA is a federal statute that "restricts health care entities from disclosure of 'protected health information.' " Order on Discovery Motions, *Lloyd v. Valley Forge Life Ins. Co.*, No. C06-5325 FDB, 2007 WL 906150, at *3, 2007 U.S. Dist. LEXIS 40526, at *10 (W.D. Wash. Mar. 23, 2007). In this case, several jurors discussed health problems with the court, with one juror asking the trial court to question him in chambers. More importantly, one venire member was a public health nurse and asked to respond privately to questions regarding her acquaintance with a defense witness because he was a patient. Though individuals may volunteer information about themselves in response to questioning, a health care provider may not answer questions about a patient absent patient consent without violating her duties under HIPAA. 42 U.S.C. § 1320d-6.

¶35  We also reject the argument that the court may compel all potential jurors to waive HIPAA protections when they are questioned about their personal medical information. Potential jurors are required to be candid with the court and are under oath to be truthful. Here, the trial court specifically asked the jury pool the common question—whether anyone had "a physical problem or limitation that would make it difficult to sit as a juror," Suppl. RP (June 26, 2007) at 9-10, and any disclosures in response to that question cannot be seen as waivers of HIPAA and the prospective juror's constitutional right under article I, section 7 of the Washington Constitution to keep personal information private. Additionally, though the jurors were free to waive their own privacy rights knowingly and voluntarily by responding to questioning, the defense witness who had received medical treatment from the prospective juror who is a public health nurse was never given an opportunity to waive his HIPAA rights and may not even be aware that those rights have been violated.

¶36 We also note that a trial court's decision to conduct small portions of jury selection in private did not prejudice Wise and that private questioning, on the record, generally works to a defendant's advantage. In order to eliminate potential jurors with particular biases, defendants frequently invite such private questioning. Indeed, in the present case, one potential juror explained in private that he had been a defense witness's schoolteacher and that he "would find it hard to be impartial or possible [to] take [the defense witness's] word." Suppl. RP (June 26, 2007) at 35. Wise successfully challenged this juror for cause. If this juror had been allowed or required to make such a statement in the presence of the entire venire, the jury pool would have been tainted.

¶37 In the absence of a timely objection, the trial court did not commit reversible error by failing to sua sponte conduct a *Bone-Club* analysis before allowing jurors to answer personal questions in chambers on the record and in the defendant's presence. Our review of the record that contains verbatim a transcript of the entire voir dire of prospective jurors, whether conducted in the courtroom or the judge's chambers, does not support Wise's claim that his constitutional right to a public trial was violated, prejudicing his right to a fair trial and requiring that he be afforded a new trial on that basis. Accordingly, we affirm.

HUNT, J., concurs.

¶38 VAN DEREN, C.J. (dissenting) — I respectfully dissent. I would reverse and remand for a new trial because the trial court failed to conduct a *Bone-Club*[5] analysis before removing the jury selection proceedings from the public courtroom, thus violating Wise's right to a public trial and the public's right to open and observable conduct of public trials. In doing so, I would adopt the majority's reasoning in *State v. Sadler*, 147 Wn. App. 97, 193 P.3d 1108 (2008).

---

[5] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

¶39 It appears from the record on appeal that it is the trial court's normal procedure, without regard to the *Bone-Club* factors, to advise jurors that they may answer questions in chambers.[6] Without discussing the *Bone-Club* factors, the trial judge, Wise, both counsel, the court clerk, and the court reporter twice moved from the courtroom to chambers to further question certain potential jurors. *Bone-Club* provides a straightforward means to balance the defendant's and the public's interest in having trials conducted in public against any specific, articulated need to conduct a limited portion of the trial outside the public forum. Thus, it protects the right to public trials as well as the need for privacy of potential jurors or witnesses. A trial court's failure to apply *Bone-Club*'s five tests before closing the courtroom deprives both the defendant and the public of an important constitutional right, and the proper remedy is remand for a new trial.

I.  MOVING VOIR DIRE TO JUDICIAL CHAMBERS EXCLUDES THE PUBLIC FROM PUBLIC TRIALS

¶40 The majority holds that no *Bone-Club* analysis was required because the courtroom was never closed to the public. It states, "Closure, if any, was temporary and partial, below the 'temporary, full closure' threshold of *Bone-Club*." Majority at 436 (quoting *Bone-Club*, 128 Wn.2d at 257). The majority bases its decision on the fact that the trial court did not expressly order closure and/or because it presumes that "the courtroom and the proceedings conducted there remained open." Majority at 436. There is no evidence in the record on appeal that any proceedings took place in the open courtroom while the judge, court reporter, court clerk, defendant, counsel, and individual jurors conducted voir dire in the judge's chambers.

---

[6] A judge's chambers comprises the judge's office and space for other courtroom personnel, including court clerks, judicial assistants, and court reporters. It does not include the jury room, and it is not part of the public courtroom. It is a relatively small area where the judge and judicial staff work when they are not in the courtroom. Often, reaching chambers involves passing other judicial chambers. Normally, no one is allowed to enter chambers without express permission.

¶41 The majority misconstrues the meaning of an open courtroom. It is the business of the court—its conduct of a trial where the public may observe—that is the essence of a public trial. Leaving the remainder of the venire in the courtroom while the business of the trial takes place in chambers does not constitute an open forum. Moving voir dire into judicial chambers precluded the public's opportunity to observe the proceedings in Wise's trial. As the majority noted in *State v. Erickson*, 146 Wn. App. 200, 209, 189 P.3d 245 (2008), private questioning of prospective jurors "outside the courtroom has more than an inadvertent or trivial impact on the proceedings"[7] and, therefore, "acts as a closure for purposes of *Bone-Club*."

¶42 Here, the trial court moved voir dire to judicial chambers, an area even less accessible than a jury room, in accord with its routine practice. It did not invite the public into chambers, and it is highly unlikely that members of the public would have understood the judge's chambers to be part of the open courtroom when voir dire was expressly moved to chambers to allow for juror privacy. Thus, I would hold that Wise has met his burden to show that the trial court closed the public trial by moving voir dire into the trial court's chambers.

## II. WISE DID NOT WAIVE HIS RIGHT TO A PUBLIC TRIAL

¶43 I also disagree with the majority's holding that Wise waived his right to public trial, in light of our Supreme Court's controlling authority. Majority at 437. A defendant's failure to object at the time of a courtroom closure does not waive his right to a public trial. *State v. Brightman*, 155

---

[7] In *State v. Brightman*, 155 Wn.2d 506, 517, 122 P.3d 150 (2005) the court held that "trivial closures may not violate a defendant's public trial right." *Erickson*, 146 Wn. App. at 208. Trivial closures are illustrated by three federal cases: *Peterson v. Williams*, 85 F.3d 39, 41-42 (2d Cir. 1996) (where court inadvertently leaves courtroom closed for 15 minutes following legitimate temporary closure, no violation of right to public trial); *United States v. Al-Smadi*, 15 F.3d 153, 154 (10th Cir. 1994) (where court security officer closed courthouse doors 20 minutes before trial proceedings complete, no violation); *Snyder v. Coiner*, 510 F.2d 224, 230 (4th Cir. 1975) (where bailiff would not allow people to leave or enter the courtroom during arguments, no violation).

Wn.2d 506, 514-15, 122 P.3d 150 (2005). I would also adopt the holdings in *Sadler*, 147 Wn. App. 97; *Erickson*, 146 Wn. App. 200; *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007); and *State v. Duckett*, 141 Wn. App. 797, 173 P.3d 948 (2007), rejecting the waiver argument.

¶44 Sadler was charged with sexual exploitation of a minor. During voir dire, the State used two of its peremptory challenges to dismiss the only two African-American venire members. Sadler raised a *Batson*[8] challenge, "asserting that the State was unlawfully excluding these jurors because of their race." The trial court moved the *Batson* challenge hearing to the jury room "[w]ithout discussing its reasons for doing so on the record or asking Sadler or anyone else present to comment." *Sadler*, 147 Wn. App. at 107. Sadler, both counsel, corrections officers, and the court reporter were present in the jury room during the hearing. The trial court ruled that the State properly struck the venire members for reasons other than race. *Sadler*, 147 Wn. App. at 107.

¶45 Sadler appealed, arguing that "the trial court denied him his constitutional right to an open public trial when it heard his *Batson* challenge in the jury room rather than in the open courtroom." *Sadler*, 147 Wn. App. at 109. The State argued that "the proceeding was not closed to the public because the trial court never asked anyone in the courtroom to leave the courtroom." *Sadler*, 147 Wn. App. at 112.

¶46 The *Sadler* majority stated, "Admittedly, unlike the situations in *Orange*[9] and *Brightman*, the trial court did not expressly exclude the public during the jury selection process." 147 Wn. App. at 112 (emphasis omitted) (citations omitted). But, the majority explained, neither is this case "similar to those instances that did not amount to a closure . . . . Here, the trial court's affirmative act of moving the proceeding into the jury room, a part of the court not ordinarily accessible to

---

[8] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[9] *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004).

the public, without inviting the public to attend, had the same effect as expressly excluding the public." *Sadler*, 147 Wn. App. at 112.

¶47 In *Erickson*, the parties agreed at the beginning of trial to use a juror questionnaire. The trial court ruled that it would hold private questioning following juror orientation; Erickson's counsel did not object. After orientation, four prospective jurors requested private questioning. The trial court "excused the rest of the prospective jurors from the courtroom and proceeded with counsel and the court reporter to the jury room." *Erickson*, 146 Wn. App. at 204.

¶48 Erickson appealed, arguing that the jury-room questioning violated his right to a public trial because conducting private questioning of jurors in a jury room "is equivalent to a courtroom closure." *Erickson*, 146 Wn. App. at 207. The State, relying on *State v. Momah*, 141 Wn. App. 705, 171 P.3d 1064 (2007), *review granted*, 163 Wn.2d 1012 (2008),[10] argued that "individual questioning of prospective jurors in chambers and in the jury room does not constitute a closure." *Erickson*, 146 Wn. App. at 207.

¶49 The majority held that the "trial court must undertake a *Bone-Club* analysis before individual questioning of prospective jurors outside the courtroom or in the jury room."[11] *Erickson*, 146 Wn. App. at 208. The majority rejected the dissent's argument that Erickson invited the error. *See Erickson*, 146 Wn. App. at 212-13 (Quinn-Brintnall, J., dissenting).

¶50 In *Frawley*, the trial court conducted voir dire in chambers based on answers prospective jurors gave to a questionnaire. Frawley waived his right to be present. *Frawley*, 140 Wn. App. at 718. On appeal, Frawley argued that the individual questioning violated his right to a public

---

[10] Our Supreme Court granted review of *Momah* and heard oral arguments on June 10, 2008. *Momah*, 163 Wn.2d 1012. The court has yet to issue an opinion.

[11] We noted that, because jury selection "lies within the ambit of the right to a public trial[,] . . . if private questioning of prospective jurors in a jury room acts as a courtroom closure, *Bone-Club* mandates findings to support such action by the trial court." *Erickson*, 146 Wn. App. at 208.

trial. The State argued that (1) Frawley waived his right and (2) "the individual voir dire was appropriately kept from public view" under a court rule that "presumes . . . privacy of juror information" "because of GR 31(j)." *Frawley*, 140 Wn. App. at 719. "Individual juror information, other than name, is presumed to be private." *Frawley*, 140 Wn. App. at 719 n.2. Because information in jury questionnaires is private, the State argued questioning based on the questionnaires is correspondingly private. *Frawley*, 140 Wn. App. at 720.

¶51 Division Three of this court rejected the State's position and held that juror questioning in chambers violated Frawley's constitutional right to a public trial. It held, "Jury selection is jury selection"; there should, therefore, be no distinction between private questioning in response to questionnaires and private questioning not based on questionnaires. The court also rejected the argument that court rules can "trump constitutional requirements that the trial be public." *Frawley*, 140 Wn. App. at 720. The trial court's failure to conduct a *Bone-Club* analysis violated Frawley's constitutional rights. *See Frawley*, 140 Wn. App. at 721.

¶52 In *Duckett*, the defendant was charged with rape, and, as in *Frawley*, the prospective jurors answered a questionnaire. 141 Wn. App. 797. The trial court allowed counsel to ask follow-up questions "outside the courtroom . . . 'so as to maintain some privacy.' " *Duckett*, 141 Wn. App. at 801 (quoting *Duckett* Report of Proceedings at 46). Duckett expressly waived his right to be present for this questioning. On appeal, Division Three reversed Duckett's second degree rape conviction based on the trial court's failure to conduct a *Bone-Club* analysis. *Duckett*, 141 Wn. App. at 801-03. The court rejected the State's contention that Duckett waived his right either explicitly or through his conduct, explaining that the right to a public trial is a constitutional right that cannot be waived through conduct. *Duckett*, 141 Wn. App. at 805-06.

¶53 Division One of our court is the only court that has concluded that there is no need for a *Bone-Club* analysis

when voir dire is moved outside the courtroom. In *Momah*, the trial court, the parties, and the court reporter "moved into chambers adjoining the presiding courtroom." *Momah*, 141 Wn. App. at 710. The trial court stated on the record, " 'We have moved into chambers here. The door is closed. We have the court reporter present, as well as all counsel and the defendant, along with the Court and juror number 36. . . .' " *Momah*, 141 Wn. App. at 710 (alteration in original). The trial court then questioned other jurors in chambers following questioning of juror 36. *Momah*, 141 Wn. App. at 711.

¶54 In rejecting Momah's challenge to the procedure on appeal, the court held that a *Bone-Club* analysis was not required because the trial court made no specific order closing the courtroom and, therefore, no closure occurred. *Momah*, 141 Wn. App. at 711-14. Furthermore, it reasoned that the trial court did not close the courtroom because "there is nothing in the record to indicate that any member of the public . . . or the press was excluded from voir dire." *Momah*, 141 Wn. App. at 712. It also relied on the fact that Momah's counsel requested the individual questioning because of "the concern that prospective jurors might have knowledge about the case that could disqualify them or that they might contaminate the rest of the prospective jurors with such knowledge." *Momah*, 141 Wn. App. at 711-12.

¶55 The clear weight of authority dictates that Wise should not be denied a new trial simply because he did not object to the trial court's routine practice of doing a portion of voir dire in chambers. Furthermore, I agree that the right to a public trial is a constitutional right that is not waiveable through conduct. *Duckett*, 141 Wn. App. at 806. Moving voir dire from the open courtroom deprives defendants of a public trial.

III.   WISE HAS STANDING TO ASSERT CONSTITUTIONAL VIOLATIONS OF THE RIGHT TO A PUBLIC TRIAL

¶56 Furthermore, I disagree with the majority's conclusion that Wise does not have standing to voice the public's

interest in public trials. Majority at 441. This contention has been rejected by both this division and Division Three of our court. *Erickson*, 146 Wn. App. at 205 n.2; *Duckett*, 141 Wn. App. at 804-05.

¶57 In *Duckett*, the court rejected the State's argument that the defendant lacked standing to challenge his conviction under article I, section 10 of the Washington State Constitution, noting that the trial court has an "independent obligation to safeguard the open administration of justice. Article I, section 10 is mandatory." *Duckett*, 141 Wn. App. at 804. The right to a public trial is "not simply the defendant's individual interest in being present, but also the public's interest." *Duckett*, 141 Wn. App. at 806.

¶58 In *Erickson*, the majority expressly rejected the dissent's argument that Erickson lacked standing to appeal based on the public's right to an open trial. 146 Wn. App. at 205 & n.2. The majority explained that "[a]rticle I, section 10's guarant[y] of public access to proceedings and article I, section 22's public trial right together perform complementary, interdependent functions that assure the fairness of our judicial system." *Erickson*, 146 Wn. App. at 205. " '[T]he constitutional requirement that justice be administered openly is . . . a constitutional obligation of the courts.' " *Erickson*, 146 Wn. App. at 206 (quoting *State v. Easterling*, 157 Wn.2d 167, 187, 137 P.3d 825 (2006) (Chambers, J., concurring)).

¶59 Here, the trial court's failure to conduct a *Bone-Club* analysis before excluding the public from voir dire allows Wise to raise the constitutional right to a public trial individually and on behalf of the public. I would follow the weight of authority and return this matter to the trial court for a new trial.

IV. PRIVACY CONSIDERATIONS REQUIRE A *BONE-CLUB* ANALYSIS

¶60 The majority agrees with the State that requiring potential jurors to answer questions regarding their health and other sensitive issues could breach the Health Insur-

ance Portability and Accountability Act (HIPAA)[12] and might taint the jury pool. Majority at 443. The State also argues that requiring potential jurors to answer questions on sensitive issues in front of the jury pool violates the jurors' rights to privacy.

¶61 HIPAA and other privacy concerns are precisely the kind of issues that compel a trial court to apply the *Bone-Club* analysis before it closes the courtroom. While a juror's request to be questioned in private may have merit, the trial court must first conduct a *Bone-Club* analysis to preserve the constitutional right to a public trial. *See Frawley*, 140 Wn. App. at 720-21. Rather than prohibiting closure, *Bone-Club* allows the trial court to close the courtroom once it has explained on the record the specific issues that require privacy. The *Bone-Club* factors "assure careful, case-by-case analysis of a closure motion," with specific determinations and findings on the record that justify the closure of public trials. 128 Wn.2d at 258.

¶62 Alternatives to closing the courtroom are readily available. The trial court may conduct questioning of potential jurors within the courtroom but apart from the rest of the venire, as in *State v. Vega*, 144 Wn. App. 914, 916-17, 184 P.3d 677 (2008). And, as Wise suggests, instead of removing the individual juror to chambers, the trial judge may sequester the rest of the jury pool in the jury room or in jury administration while individual questioning of the potential jurors takes place in open court.

V. *Bone-Club* Requires Remand for a New Trial

¶63 The protections of the right to public trial under the federal and our state constitutions require a trial court " 'to resist a closure motion except under the most unusual circumstances.' " *State v. Russell*, 141 Wn. App. 733, 738, 172 P.3d 361 (2007) (quoting *Bone-Club*, 128 Wn.2d at 259); *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36, 640 P.2d

---

[12] Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996).

716 (1982). We presume prejudice where the court proceedings violate this right. *State v. Rivera*, 108 Wn. App. 645, 652, 32 P.3d 292 (2001). A trial court's failure to undertake the *Bone-Club* analysis, including allowing anyone present an opportunity to object to the closure, undercuts these constitutional guaranties. 128 Wn.2d at 258-59.

¶64 In failing to address the *Bone-Club* factors and moving voir dire to chambers without unusual circumstances being articulated on the record, the trial court violated Wise's right to a public trial. The remedy for such a violation is to reverse and remand for a new trial. *Orange*, 152 Wn.2d at 814.

¶65 For all the stated reasons, I would grant Wise a new trial.