# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 76113-7-I |
| | ) | |
| LESLIE MCCANN, | ) | DIVISION ONE |
| | ) | |
| Appellant, | ) | PUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| JEFFERY MCCANN, | ) | |
| | ) | |
| Respondent. | ) | FILED: August 20, 2018 |
| | ) | |

APPELWICK, C.J. — Orr seeks a new trial because the trial court denied her accommodations for disability sought pursuant to GR 33. She argues that she was denied a fair trial and that her constitutional rights were violated as a result. But, Orr failed to establish that she had a disability entitling her to accommodation under GR 33. We affirm.

## FACTS

The care of the parties' special needs child was the central issue in this dissolution proceeding. Leslie Orr's[1] and Jeffery McCann's daughter was born on August 24, 2004. The daughter has been diagnosed with high-functioning autism, separation anxiety, obsessive-compulsive disorder (OCD), and selective mutism. The parenting plan evaluation, authored by Clinical and Forensic Psychologist Dr. Gary Wieder, concluded that the daughter is "profoundly impaired and has lived a

_____

[1] Orr was previously known as Leslie McCann. The final dissolution decree changed her name to Leslie Orr.

sheltered and unusual life." Dr. Wieder warned that "[w]ithout intensive specialized treatment for separation anxiety and OCD she will likely become a disabled adult." The daughter was completely estranged from her father for reasons that Dr. Wieder described as "completely irrational" and "a manifestation of [the daughter's] severe anxiety/OCD."

Following trial, the court granted McCann full decision making authority for the child's education and medical care, and ordered that the child be transitioned to live with McCann half of the time.[2] It appointed a guardian ad litem. It also ordered McCann to pay spousal support and awarded him the family residence. Orr does not assign error to the substance of the dissolution decree or related orders. Instead, she seeks a new trial based on the failure of the trial court to accommodate her disability during the trial.

Orr filed for dissolution from McCann on October 26, 2015. Trial was set for September 26, 2016. The discovery cut off was August 26, 2016. Dr. Wieder completed the parenting evaluation in June 2016. Mediation was scheduled for August 29, 2016.

Orr was represented by three different attorneys in the extensive pretrial litigation during the nine months after she filed for dissolution. Her last counsel withdrew on July 18, 2016 and Orr proceeded pro se through trial. The proceedings from this point forward relative to accommodation are at issue in this appeal.

---

[2]The parenting plan giving residential time to McCann had not been implemented at the time of oral argument. Neither Orr nor the child could be located.

2

On August 9, 2016, Orr resumed the discovery process and issued multiple subpoenas duces tecum for business records.[3] On August 26, 2016, the day of the discovery cutoff and one month before trial, Orr e-mailed a request for a 30 day trial continuance. The basis for her request was to give her time to identify potential accommodations for an alleged disability. The request was e-mailed to the King County Superior Court deputy court administrative officer. She was not in the office. On September 2, 2016, the Friday before the Labor Day weekend, the administrative officer forwarded the request to the assigned trial court.

The mediation set for August 29, 2016 was unsuccessful.

On September 7, 2016, the trial court denied the request for a continuance, because it had not been served on McCann as required by CR 5, could potentially affect court proceedings, and prejudice McCann.

On September 14, 2016, less than two weeks before trial, Orr submitted additional information to the trial court in support of her continuance request. She provided a completed request for accommodation form, on which she described her disability as a "[p]sychiatric injury either caused by or exacerbated by the stress regarding protecting and providing for her daughter with developmental disabilities." With this submission, she included a declaration from Dr. Karin Huffer, a licensed therapist. Dr. Huffer's curriculum vitae stated that she had a high honorary Doctor of Philosophy (PhD) in counseling and forensic psychology

---

[3] Orr alleged that the third party recipients of the subpoenas were entities that may have paid McCann. Orr believed that the payment records from these entities might contradict McCann's previous interrogatories regarding his source of income.

from Kings International University of Science and Technology, Delaware and Republic of Dominica, based on her research and work, and was an adjunct professor of Professional Studies at John Jay College of Criminal Justice. She described herself as an Americans with Disability Act of 1990[4] (ADA) advocate. Dr. Huffer described Orr as "a qualified person under the Americans with Disabilities Act Amendments Act due to psychiatric injury either caused by or exacerbated by the stress regarding protecting and providing for her daughter with developmental disabilities." The materials did not include documentation of a medical diagnosis of posttraumatic stress disorder (PTSD) or any other disability. Nevertheless, Dr. Huffer stated that Orr needed a disability advocate with her at all times during trial, and Orr required a 30 day continuance to properly evaluate what accommodations were necessary.

On September 16, 2016, Orr filed an addendum to her accommodation request, this time seeking a continuance until December 1, 2016. The majority of this addendum discussed the voluminous discovery that Orr had received from her August 9 subpoenas and the time she needed to adequately review this discovery. Two sentences of that addendum noted that disability accommodations "are still not in place" which had hindered her access to justice and caused her to miss deadlines and procedures. The only accommodation requested by Orr in her previous filing was that an ADA advocate be present during trial. Orr's memorandum did not identify what deadlines or procedures she had missed.

---

[4] 42 U.S.C. §§ 12101-12213.

McCann objected to the continuance. On September 23, the trial court again denied the requests for continuance in the September 14 and 16 filings.

Trial commenced on September 26, 2016. Orr made a request for a two week continuance: "I have an attorney who is willing to represent me, . . . and can do it with a short continuance of two weeks. I do not feel I am prepared or able to represent myself in this matter. I am extremely afraid of cross[-]examining and directly examining Jeff." The trial court denied the request, reasoning,

> I understand that request. That request is again denied. You have made that a few times. I understand the reluctance that someone has representing themselves, but you have had an opportunity to obtain an attorney. You have had at least a couple of attorneys representing you in this matter. I have also had the opportunity to interact with you in court and receive your written material, which is of high quality in advocating your position. So I respect what you are asking for, but that request is denied.[5][6]

The issues at trial generally involved the care of the daughter, property division, and maintenance. Orr began her case-in-chief by calling McCann as a witness and examining him at length.

Next, she called Dr. Huffer, who testified by phone. Dr. Huffer testified that she teaches an Americans with disabilities certification course, and she testified about how the parties' child should be accommodated. She did not testify that she had diagnosed Orr with any specific disability, nor that she was competent to do so. On cross-examination she testified that she supplied a "functional evaluation"

---

[5] The trial court subsequently also observed, "She has had money to hire an attorney."

[6] Orr argues the court's comments on the high quality of her work indicates the court was substituting its judgment for the evidence on the question of whether she had a disability. In context of the statement, such a claim is baseless.

regarding accommodations necessary for Orr. She did not elaborate on what a functional evaluation means. Nor did she explain the extent to which the assessment and any recommended accommodations were predicated on Orr's claim of PTSD.

On the third day of trial, September 28, 2016, Orr failed to appear. One of Orr's friends reported to the trial court that Orr had had symptoms of vomiting, fainting, incoherence, chest pains, and panic attack and had to go to the emergency room. The trial court recessed until the next day. However, on September 28, the trial court received two packets of information from Orr. They were materials from Dr. Huffer prepared as part of another request for a disability accommodation.[7]

Orr did not appear in court the next day, either. The trial court addressed the materials it received the previous day. It noted that the only information that purported to identify a disability diagnosis referred to the parties' daughter, who had been diagnosed with autism disorder, among other things. For the first time, the documents specifically requested distinct accommodations, eight of them, other than a continuance. But, because the supporting information failed to specifically identify that Orr had been diagnosed with a disability, and because it was unclear whether Dr. Huffer had appropriate credentials, the trial court concluded that it had insufficient evidence to find that Orr had a disability as

---

[7] The packets were duplicative; the latter included an accommodation request cover sheet.

6

contemplated by GR 33. It ordered trial to continue on the following Monday, October 3.

On October 3, before trial resumed, the court received another packet of information from Orr relating to accommodations.[8] Much of Dr. Huffer's material in this packet discussed the challenges that disabled persons have in access to justice, and only a small portion focused on Orr specifically.[9] However, Dr. Huffer included a new line: "Diagnosis: Post-Traumatic Stress Disorder."[10]

This was the first time a reference to a diagnosis related to Orr was made and the first opportunity that the trial court had to address the accommodations

---

[8] The October 3 materials were filed late on September 30, but the trial court did not actually receive them until the morning of October 3.

[9] As with previous submissions, the October 3, 2016 packet referred to domestic violence suffered by Orr. It noted that Orr's history demonstrates an insidious type of domestic abuse. No details were provided.

Importantly, Orr had previously reported two incidents of domestic violence. First, in 2012, Orr reported a domestic disturbance after a struggle over a briefcase. Second, in 2013, Orr reported that McCann had wrapped his arms and legs around her during a dispute. In both cases, sheriff's deputies responded, but no arrests were made. Orr obtained a temporary restraining order against McCann, and also petitioned for a domestic violence protection order. The parties underwent a domestic violence assessment, which rejected the assertion that there was domestic violence in the marriage. Following that assessment, the petition for a domestic violence protection order was dismissed by agreement between the parties. Orr also had filed a tort claim against McCann based on domestic violence, but abandoned that case.

[10] In her opening brief, Orr argues that we should also consider evidence not submitted below that shows Orr's treating naturopath, Dr. Beth Falanga, had diagnosed her with PTSD on September 19, 2016. She asserts that she was unable to present this diagnosis below, because this physician was scheduled to testify on the dates when Orr fell ill, and was otherwise unavailable.

Orr does not give a meaningful analysis of the RAP 9.11 requirements. We deny the request that we consider this evidence.

In response to the RAP 9.11 request in Orr's opening brief, McCann moved to either strike Dr. Falanga's diagnosis, or to allow submission of an interrogatory answer in which Orr stated that she did not have any mental disorder. Because we do not consider Orr's offered evidence, we need not consider this offer either.

7

request in context. After analyzing the October 3 packet, the trial court was again unable to conclude that Orr had provided sufficient evidence to show that she in fact suffered from a disability:

> The Court has several concerns about this memorandum from Karen Huffer. One is that this memorandum is primarily a general broad discussion of Ms. Huffer's concerns around coercive control with very little indication that Dr. Huffer's observations are related specifically to Ms. McCann's actual situation. In fact, the memorandum makes very few actual references to Ms. McCann or Ms. Orr specifically. Second, after reading Dr. Huffer's memorandum, reading her curriculum vitae, which is trial Exhibit 2, and hearing her testimony by phone last week, it is far from clear that Dr. Huffer has the credentials or expertise to provide a medical psychiatric or psychological evaluation of Ms. McCann. Third, even if Dr. Huffer did have the credentials to do so, it does not appear that she has actually done so. Although she is offering some conclusions.
>
> In summary, based on the information provided to me, I cannot find that Ms. McCann has a disability.

The court went on to address the requested accommodations out of respect for Orr:

> Even so, I'm going to address the 8, now 9, specific requests for accommodation in Dr. Huffer's memo. I do this for three primary reasons. First, regardless of the legal analysis, as a matter of respect and dignity, I want all parties to have within reason a pleasant court experience, or at the least, the least unpleasant court experience. Second, there is a child involved in this case. It is in the child's best interest for me to keep this trial moving along towards a final parenting plan. That is consistent with what is expressed in our state case law, as well as RCW 26.09, the revised code of Washington. In this case, those policy reasons are exacerbated by the fact that it has been so long since the child has seen her father. Third, I want to address the accommodations in the event that I'm wrong about the finding [on] disability and someone believes that I have reached an incorrect conclusion, it may be helpful to also have my analysis about the accommodations. I want to note that the accommodations must be, to use GR 33(b)'s wording, necessitated

8

by the disability. So there must be a connection there. So let me address the nine accommodations that Dr. Huffer proposes.

Even though it found no disability, the trial court did not outright reject these nine requested accommodations. Instead, it completely granted some, partially granted some, and denied others on the grounds that they were unwarranted or impractical.[11]

Following trial, the court granted McCann full decision making authority for the child's education and medical care, and ordered that the child be transitioned to live with McCann half of the time. It appointed a guardian ad litem. And, the trial court ordered McCann to pay spousal support, and awarded McCann the family residence.

Orr moved for a new trial, to void the judgment, and for a new trial judge. She argued that her disabilities were not properly accommodated. The trial court denied these motions.

Orr appeals.

## DISCUSSION

The appeal turns on whether Orr has a disability, and if so, whether the disability accommodations given to Orr, or lack thereof, deprived her of a fair trial.

---

[11] The nine requested accommodations were as follows: (1) 30 day continuance, (2) trained ADA advocate at Orr's side at all times or reachable by phone during trial, (3) rules, orders, and deadlines must be provided to Orr orally and written, (4) Orr must be allowed breaks when symptomatic, (5) Orr must be allowed to record all proceedings for her private use, (6) court days must be shortened to no more than four hours, (7) Orr must be allowed to wait for her court time in a sequestered area away from McCann, (8) Orr may need further continuances to revisit issues decided when she did not have access to proceedings, (9) Orr must be allowed to seek medical care if she becomes symptomatic.

Orr makes three arguments. First, she argues that the trial court procedurally and substantively misapplied GR 33. Second, she argues that the trial court abused its discretion in denying her motion for a mistrial. Third, she argues that she was denied her procedural due process rights. McCann seeks attorney fees on appeal, based on what he describes as Orr's intransigence.

I.  GR 33

Orr argues that the trial court misapplied GR 33. Specifically, she argues that the trial court misapplied the procedures for addressing GR 33 requests. And, she argues that the trial court substantively erred by not implementing the required accommodations under GR 33.

In response, McCann raises two threshold arguments. First, he makes a purely legal argument that GR 33 is not subject to appeal in the same case in which the accommodation was denied, and, in any event, the proper party to bring that claim against is the King County Superior Court, not McCann. Second, he argues that Orr failed to prove that she has a disability, and thus the provisions of GR 33 do not apply.

A. Appealability and Proper Party

McCann argues that Orr cannot seek relief under GR 33, because (1) the rule provides no right of appeal, and (2) the real party in interest in any such suit would be King County, because McCann was not the party that denied her an accommodation. No Washington case has addressed whether and how a misapplication of GR 33 may be appealed.

10

McCann is correct that GR 33 does not explicitly provide the right to an appeal. But, comment 1 to GR 33 states that the policy of the courts is to provide meaningful access to justice and the judicial system. Creating a strict, narrow, and more onerous path to obtaining a remedy under GR 33 would cut against this stated purpose. And, Washington appellate courts have repeatedly entertained appeals involving other general rules that, like GR 33, do not grant an explicit right to an appeal. In In re Dependency of M.H.P., 184 Wn.2d 741, 753, 364 P.3d 94 (2015), the Supreme Court reviewed the trial court's application of GR 15(c), which concerns sealing of records. Like GR 33, GR 15 does not explicitly grant a right to appeal, or otherwise instruct that an application of GR 15 is appealable. And, in State v. Russell, 141 Wn. App. 733, 740, 172 P.3d 361 (2007), this court reviewed the trial court's application of GR 16, which concerns media in the courtroom, to the defendant's trial below. As with those rules, a party is entitled to challenge the application of GR 33 in an appeal of the same proceeding in which the GR 33 accommodations were sought.

McCann also contends that King County is the proper party to defend against Orr's claims that GR 33 was violated, because it was the superior court that denied Orr's accommodation. That argument fails for similar reasons. In M.H.P., the dispute involved application of the general rule on sealing, GR 15. See 184 Wn.2d 748. In Russell, the defendant claimed that his right to a public trial was denied, in part because the trial court failed to allow open access to the court room under GR 16. 141 Wn. App. at 740. In neither case were the appellants required to bring their claims against the counties. The same is true here.

Orr contends that her right to a fair trial was violated because of the trial court's misapplication of a general rule that pertains to courtroom procedures, not because of any conduct by McCann. The issue in this forum is whether Orr was denied a fair trial, not whether King County should be sanctioned for failure to accommodate her. We reject McCann's argument that an appeal of the accommodation issue must be separate from an appeal of the underlying action and that King County is the proper party to defend such an appeal.

B. Proof of Disability

The trial court found that Orr failed to establish that she has a disability, and thus accommodations under GR 33, including a continuance, were not warranted.

1. GR 33 Requires Existence of a Disability to Trigger Accommodation

We first address whether the trial court properly interpreted GR 33 to require that Orr prove the existence of a disability to trigger the accommodation process. The interpretation of a court rule is a question of law that is reviewed de novo. Seto v. Am. Elevator, Inc., 159 Wn.2d 767, 772, 154 P.3d 189 (2007). GR 33 requires that a court service be readily accessible to a person with a disability. GR 33(a)(1). It defines "person with a disability" as

> a person with a sensory, mental or physical disability as defined by the Americans with Disabilities Act of 1990 (§ 42 U.S.C. 12101 et seq.), the Washington State Law Against Discrimination [(WLAD)] (RCW 49.60 et seq.), or other similar local, state, or federal laws."

GR 33(a)(2). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual," "record of such impairment," or "being regarded as having such an impairment." 42

U.S.C. § 12102(1). WLAD defines "disability" as "a sensory, mental, or physical impairment," that is "medically cognizable or diagnosable," "[e]xists as a record or history," or is "perceived to exist whether or not it exists in fact."[12] RCW 49.60.040(7). At oral argument, Orr argued that WLAD contains a broader definition of disability than the ADA. Orr claimed psychiatric injury identified as PTSD. McCann does not argue that PTSD is not a disability. The question is whether Orr had the disability she claimed.

GR 33 permits a trial court to deny an accommodation request for a handful of reasons:

> (A) the person requesting application has failed to satisfy the substantive requirements of this rule; or
>
> (B) the court is unable to provide the requested accommodation on the date of the proceeding and the proceeding cannot be continued without significant prejudice to a party; or
>
> (C) permitting the applicant to participate in the proceedings with the requested accommodation would create a direct threat to the health or well being of the applicant or others.
>
> (D) the requested accommodation would create an undue financial or administrative burden for the court; or would fundamentally alter the nature of the court service, program or activity under (i) or (ii):
>
> > (i) An accommodation may be denied based on a fundamental alteration or undue burden only after considering all resources available for the funding and operation of the service, program or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion.

---

[12] In the employment context, Washington courts have reasoned that "[i]f the employee is relying on perception to establish disability, the employer, not the employee, must perceive the disability." Fischer-McReynolds v. Quasim, 101 Wn. App. 801, 810, 6 P.3d 30 (2000). Orr does not specifically argue under a perceived disability theory, and thus it is not at issue.

(ii) If a fundamental alteration or undue burden would result from fulfilling the request, the Court shall nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the Court.

GR 33(c)(2). GR 33(c)(2)(A) is the exception at issue.

The trial court did not err in its interpretation that GR 33 requires proof of disability as a prerequisite to accommodations at trial.

## 2. The Evidence Did Not Establish the Existence of a Disability

When the trial court has weighed the evidence, our review is limited to determining whether substantial evidence supports the findings. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). Orr argues that the trial court's actions reflect implicit bias against or ignorance of mental illness. Her argument largely ignores that her claim of PTSD was not supported by evidence of a competent diagnosis and that Dr. Huffer's accommodation recommendations were predicated on the assumption that PTSD had been diagnosed.

In her August 26 request for a continuance, Orr claimed a disability of "[p]sychiatric injury either caused or exacerbated by the stress regarding protecting and providing for her daughter with developmental disabilities." The accommodation she requested was a 30 day continuance to complete ADA accommodation evaluations. The attached declaration from Dr. Huffer stated that she had been engaged by Orr to "help alleviate her anxiety."

In Dr. Huffer's September 28, 2016, submission, she discussed only "[d]iagnostic [c]onsiderations" with respect to the 12 year old special needs daughter. She noted in this and subsequent submissions that "Orr's history

14

demonstrates an insidious type of domestic abuse," and opined that "[t]he type of PTSD suffered from intimate partner violence usually is sustained by" a number of factors. However, the evidence at trial does not support the domestic violence allegations implied by Dr. Huffer. Most notably, the domestic violence assessment of McCann found that the information did not lead to the conclusion that McCann engaged in a pattern of domestic violence. To the contrary, that report stated,

> Ms. Orr maintains that Mr. McCann has been controlling of her throughout the marriage but a review of the information provided indicates that Ms. Orr has been controlling of Mr. McCann, his relationship with his daughter and the type of treatment and or/care that [the daughter] has received to address her significant mental health needs. It appears that Ms. Orr has used [the daughter] to control Mr. McCann and has marginalized his access to or input into his daughter.

The assessment also recommended that the domestic violence protection order against McCann be dismissed, and it ultimately was dismissed by agreement on January 29, 2016. Dr. Huffer provided no evidence in her written materials or in her testimony that Orr suffered from domestic violence at the hands of McCann. Neither she nor any other expert witness provided a competent diagnosis that Orr suffered from PTSD, regardless of cause. Dr. Huffer's final amended written submission, provided on October 3, 2016, days after she had testified at trial, included a notation for the first time of "Post Traumatic Stress Disorder (Acute Stress Disorder)" specifically attributed to Orr. However, Dr. Huffer did not identify who may have made such a diagnosis. She did not claim in her memorandum or testimony to have made a diagnosis of PTSD, nor did she claim to have the proper credentials to make such a diagnosis.

15

Instead, Dr. Huffer purported to offer a "functional assessment" of Orr. She described her expertise as, "I work as a special ed[ucation] teacher, now a special ed[ucation] teacher on steroids going around the nation ensuring everybody everywhere has equal access. But it is taking the disability law and being sure that it is included in decisions in order to ensure equal access."

The trial court found that Orr failed to satisfy the substantive requirements of the rule—proof of a disability. To the extent the court concluded that Dr. Huffer was not qualified to diagnose Orr with a psychiatric disability, that conclusion is supported by substantial evidence. And, to the extent that the trial court concluded that Orr failed to demonstrate that she had been diagnosed with a disability that conclusion is also supported by substantial evidence. In absence of a disability, it was not error for the trial court to deny the requested accommodations.

### C. Procedural Arguments

Orr also argues that the trial court erred in its process for addressing her GR 33 request. She argues that (1) the trial court erred by not entering a written decision denying her accommodation requests, (2) the trial court erred by not advising her of her right to file an ADA complaint, (3) the process should have been handled wholly ex parte, and (4) the trial court failed to promptly act on the requests.

The text of the rule refutes the argument that the decision must have been in writing. The rule states,

> The court shall, in writing or on the record, inform the person requesting an accommodation that the request for accommodation has been granted or denied, in whole or in part, and the nature and scope of the accommodation

16

to be provided, if any. A written decision shall be entered in the proceedings file, if any, in which case the court shall determine whether or not the decision should be sealed. If there [are] no proceedings filed the decision shall be entered in the court's administrative files, with the same determination about filing under seal.

GR 33(d) (emphasis added). If a written decision is made, it shall be entered in the proceedings file, if any.

Here, when the trial court entered decisions, it did so <u>on the record</u> in each instance and stated the grounds for its ruling. It also denied, <u>in writing</u>, the August 26 continuance request, and the September 14 and September 16 requests. It appears that the trial court denied the later requests for a continuance and accommodation made at trial on the record, but not in writing.[13] We do not read GR 33 as requiring that the court file a written decision in every instance. Therefore, Orr has not established the trial court violated the rule. But, even if the rule required a written order following a decision on the record in every instance, Orr does not articulate how failure to enter these written orders denied her a fair trial.

Second, Orr argues that the trial court erred by not advising her of her right to file an ADA complaint. GR 33(e) states that when a request is denied, the court must "ensure that the person requesting the accommodation is informed of his or her right to file an ADA complaint with the United States Department of Justice Civil Rights Division." GR 33(e). McCann concedes that the trial court did not advise Orr of this right. Orr clearly knows of the right, but the record does not

---

[13] To the extent that any of Orr's requests for a continuance were not related to a disability, but were to allow her to better prepare for trial, GR 33 does not apply. Given the proximity of those requests to the date of trial, we find no abuse of discretion in denying them.

reveal when she became aware of it. She does not argue that, as a result of this failure of the court to give notice, she learned of this right too late to file such a complaint, or that any remedies she might have under the ADA have been prejudiced. She does not identify how this failure of notice denied her a fair trial.

Third, Orr argues that the GR 33 process should have been wholly ex parte. The rule specifically states that an application requesting accommodation "may be presented ex parte in writing." GR 33(b)(4). However, the rule does not require that the request be handled wholly ex parte. Nothing in the facts of this case compels a conclusion that this proceeding was required to be wholly ex parte.

The August 26, September 14, and September 16 requests all involved a continuance in the trial date. The August 26 application neither documented a disability, nor documented necessary accommodations. It requested time to evaluate the need for accommodations. Health care information is to be sealed and available only to the court and the person requesting accommodation unless expressly ordered by the court. GR 33(b)(5). The documents were sealed by the trial court. But, the court then required them to be available to McCann, as allowed by the rule.

The trial court was aware that McCann and his daughter were being kept apart pending the outcome of the trial. The trial court recognized that McCann had a right to notice of a motion for a continuance. See CR 5(a). It ordered that McCann be served with the continuance and accommodation requests. Orr makes no claim that disclosure of the information she submitted in her accommodation documents, by service on McCann, resulted in prejudice to her at trial. In fact, she

made the same argument for a continuance at the start of trial. On the facts of these three requests, it was not an abuse of discretion for the trial court to apply CR 5, requiring service of the motion on McCann, rather than suspending the court rule and proceeding ex parte.

The continuances requested on September 14, 2016 and on September 16, repeated the original request, but relied heavily on Orr's declaration that she needed additional time to prepare for trial due to discovery she initiated after going pro se. The September 28, 2016 and October 3, 2016 requests contained a list of accommodation requests, in addition to a continuance. The requests were sealed, but the trial court ordered that they be served on McCann. Orr did not object to service of the subsequent motions on McCann. She does not argue any prejudice from serving the motions. On these facts it was not an abuse of discretion to require notice to McCann of these motions.

Fourth, Orr argues that the trial court failed to act promptly in resolving her accommodation requests. GR 33(b)(1) states that requests "will be addressed promptly." Orr argues that trial court did not act "promptly," because her first request was made on August 26, but the trial court took nearly a month to rule on the merits of that request. The initial request was not forwarded to the trial court until Friday, September 2, 2016, because the administrator to whom it was addressed had been out of the office. And, the trial court was on leave until September 6, 2016. On September 7, the trial court denied the request. The trial court acted promptly on this initial request.

Orr renewed the continuance requests on September 14, 2016 and on September 16. On their face, the requests did not establish that a disability existed, and it was clear that accommodations, if any, would be identified by the yet-to-be-done evaluation. The only accommodation requested to that point was that an ADA advocate be present with Orr.[14] McCann was entitled to five days' notice as to the continuance under CR 6(d). The trial court issued a written denial on September 23, 2016. The trial court acted promptly on Orr's request.

The next continuance request was made on the first day of trial, September 26, 2016. The trial court denied that request promptly that day.

On September 28, 2016 the first request was made for any specific accommodation, other than a continuance or to have an ADA advocate present. The trial court directly addressed that request on the record at the beginning of the next trial day at which Orr was present, October 3, 2016.

The trial court did not violate GR 33(b) by failing to act promptly.

II. Motion for New Trial

Orr argues that the trial court abused its discretion in denying her motion for a new trial due to irregularities in the proceedings that arose out of the GR 33 accommodation requests and denials.

Under CR 59(a)(1), a trial court may "grant a new trial if an irregularity in the proceedings of the court prevented the moving party from receiving a fair trial and materially affected the party's substantial rights." Ramey v. Knorr, 130 Wn. App.

---

[14] Orr was allowed to have persons of her choosing at her side for trial. Whether they were formally ADA advocates is not clear from the record.

672, 687, 124 P.3d 314 (2005). A trial court's decision to grant or deny a new trial is reviewed for an abused of discretion. Alum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wn.2d 517, 537, 998 P.2d 856 (2000). A court abuses its discretion when an order is manifestly unreasonable or based on untenable grounds. In re Pers. Restraint of Rhome, 172 Wn.2d 654, 668, 260 P.3d 874 (2011).

But, here, the irregularity relied on by Orr is the same disability accommodation issue that is the basis of the appeal: "Here, the trial court deviated from the appropriate proceeding when . . . it failed to abide by the requirements of GR 33 and denied Leslie necessary accommodations for her disability." Her argument for a new trial effectively stands or falls based on the outcome of the analysis of GR 33 above. And, because we reject Orr's argument that she was denied a fair trial because GR 33 was violated, we also reject Orr's argument for a new trial.

The trial court did not abuse its discretion in denying Orr's motion for a new trial.

III.    Procedural Due Process

Orr also argues that the trial court's failure to provide the requested accommodations denied Orr her due process rights under the United States Constitution and the Washington Constitution. Constitutional challenges are questions of law subject to de novo review. City of Redmond v. Moore, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

The United States Constitution guarantees that federal and state governments will not deprive an individual of "life, liberty, or property, without due

process of law." U.S. CONST. amends. V, XIV, § 1. The due process clause of the Fourteenth Amendment confers both procedural and substantive protections. Albright v. Oliver, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation. Mathews v. Eldridge, 424 U.S. 319, 348-49, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

Dissolution proceedings certainly involve liberty interests, particularly when children are involved. Orr does not claim that trial procedures for dissolution actions are unconstitutional in general. Nor is her procedural due process claim about the burden of proceeding pro se. Her challenge is strictly to the failure to grant her the accommodations she sought for her disability. She relies on the protections provided in GR 33 as the basis for the accommodations sought. She does not argue that GR 33 is facially unconstitutional or otherwise insufficient to protect persons with disabilities.

As noted in the preceding analysis, Orr had opportunity from the time of filing her case, and well into trial, to establish factually that she had a disability entitling her to protection and accommodation under GR 33. She failed to establish that she suffers from a disability. Therefore, she was not entitled to the accommodations provided for in GR 33. Her procedural due process claim fails as a matter of law.

22

## IV. Attorney Fees

McCann seeks his fees on appeal. He argues that Orr's conduct during the litigation has shown intransigence and a willingness to defy court orders, and thus fees are warranted. But, on appeal, Orr has provided a novel argument about GR 33, and the disposition of this case should not and will not foreclose any remedies at law available to McCann after disposition of this case. We decline to award McCann his fees.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Trickey, J_        _Becker, J._