# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>DAVID MILLER,<br><br>               Respondent,<br><br>   v.<br><br>WENDY MILLER,<br><br>               Appellant. | No.  53564-5-II<br><br><br><br><br>PART-PUBLISHED OPINION |

LEE, C.J. — Wendy Miller appeals the trial court's orders denying her motions for relief from judgment and for attorney fees and her motion for reconsideration relating to her attempt to vacate the final orders[1] dissolving her marriage to David Miller.  Wendy[2] argues that because she was entitled to relief from the agreed dissolution orders under CR 60(b)(1), (2), (4), and (11), the trial court abused its discretion by not vacating the final orders dissolving her marriage to David and not awarding her attorney fees.  Wendy also requests attorney fees on appeal.

We hold that the trial court did not abuse its discretion in denying Wendy's motion for relief from judgment and affirm the trial court's order denying Wendy's motion for relief from judgment.  We also affirm the trial court's order denying Wendy's request for attorney fees, and we deny Wendy's request for attorney fees on appeal.  In the published portion of this opinion, we

---

[1]  The  trial court's findings and conclusions, the final divorce order, and the child support order.

[2]  Because the parties have the same last name, we refer to them by their first names for clarity. We mean no disrespect.

address Wendy's arguments related to the motion to vacate under CR 60(b)(1). Wendy's remaining arguments are addressed in the unpublished portion of the opinion.

FACTS

Wendy and David were married on June 10, 2002. They had one child, D.K.M. On April 25, 2018, David filed a petition for dissolution of the marriage. The petition alleged that the marriage was irretrievably broken.

David served Wendy with the dissolution petition on April 25, 2018. On May 3, Wendy signed her response to the dissolution petition, which agreed with all provisions in the dissolution petition, including the provision asserting that maintenance was not necessary. On May 4, David and Wendy signed, and the trial court entered, a stipulated interim order. Wendy filed her response on May 8.

On May 14, both parties signed the findings and conclusions and the final dissolution order. Also on May 14, less than 30 days after the dissolution petition was filed, David signed a "Declaration in Support of Entry of Final Divorce Order Without a Hearing." Clerk's Papers (CP) at 57. David's declaration stated that "[Wendy] was served on April 25, 2018, and more than ninety (90) days have elapsed since the filing and service of the Petition." CP at 57. David also declared that the marriage was irretrievably broken and that the "division of property contained in the Findings and Conclusions about a Marriage is a fair and equitable division." CP at 58.

On July 25, 91 days after the dissolution petition was filed, the trial court entered findings and conclusion and the final dissolution order without a hearing.

On November 5, Wendy moved for relief of judgment and for attorney fees. Wendy argued that there was an irregularity under CR 60(b)(1) that justified vacating the orders because the

declaration in lieu of testimony David filed was signed before the expiration of the 90 day waiting period.[3] In response, David argued that there was no irregularity in obtaining the dissolution orders because his declaration in lieu of testimony was not presented to the trial court until after the 90 day waiting period.

The trial court ruled that Wendy "failed to demonstrate an adequate basis to vacate final orders." CP at 384-85. As to Wendy's argument that the date the declaration was signed was an irregularity under CR 60(b)(1), the trial court ruled,

> [Local Rule] 4.1(a) provides that "[t]he declaration in lieu of testimony must be made after the expiration of the ninety (90) day period." The waiting period had passed when final orders were entered and there is no dispute regarding the accuracy of the factual representations in the Declaration. While the term "made" provides some ambiguity regarding the timing of execution versus the timing of filing, because the Declaration was not filed until after the required waiting period[,] the Declaration does not constitute an irregularity with entry of the final orders sufficient to satisfy CR 60(b)(1).

CP at 385.

Wendy moved for reconsideration of the trial court's ruling. The trial court denied Wendy's motion for reconsideration.

Wendy appeals.

---

[3] Wendy also argued that there was an irregularity because the parenting plan was also entered before the expiration of the 90 day waiting period. However, at oral argument on the motion before the trial court, Wendy stated that she was not moving to vacate the final parenting plan because she agreed that the terms of the parenting plan were appropriate.

ANALYSIS

Wendy argues that the trial court abused its discretion by denying her motion for relief from judgment seeking vacation of the dissolution orders under CR 60(b)(1).[4] She contends that the *signing* of the dissolution orders and David's declaration before the statutory 90-day waiting period required under RCW 26.09.030 and LCR 4.1(a) was an irregularity in obtaining the dissolution orders. We disagree.

A.    LEGAL PRINCIPLES

We will not reverse a trial court's denial of a motion to vacate under CR 60(b) unless the court manifestly abused its discretion. *Haley v. Highland*, 142 Wn.2d 135, 156, 12 P.3d 119 (2000). The trial court abuses its discretion if it "exercised its discretion on untenable grounds or for untenable reasons." *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991).

Under CR 60(b), "the court may relieve a party or the party's legal representative from a final judgment" under specified circumstances. CR 60(b)(1) allows for relief from judgment due to "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order."

> "An irregularity, within the meaning of this rule, has been defined as the want of adherence to some prescribed rule or mode of proceeding; and it consists either in

---

[4] To the extent Wendy argues that the trial court abused its discretion because it deprived Wendy "of an opportunity to have the issues related to the dissolution of her marriage with David decided on the merits," this argument is misplaced. Br. of Appellant at 18. We often favor vacation of *default* judgments because a default judgment deprives the defaulted party of the opportunity to respond and defend the case. *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007). However, here, Wendy responded to the petition for dissolution and the dissolution orders were entered based on an agreed settlement, not default. Therefore, Wendy did have an opportunity to respond and defend.

the omitting to do something that is necessary for the due and orderly conducting of a suit, or in doing it in an unreasonable time or improper manner."

*Young v. Thomas*, 193 Wn. App. 427, 436, 378 P.3d 183 (2016) (quoting *Haller v. Wallis*, 89 Wn.2d 539, 543, 573 P.2d 1302 (1978)).

B.     IRREGULARITY UNDER RCW 26.09.030 AND LCR 4.1(a)

RCW 26.09.030 states, in relevant part,

> When a party who (1) is a resident of this state . . . petitions for dissolution of marriage or dissolution of domestic partnership, and alleges that the marriage or domestic partnership is irretrievably broken and when ninety days have elapsed since the petition was filed and from the date when service of summons was made upon the respondent or the first publication of summons was made, the court shall proceed as follows . . . .

Clark County has a local court rule that allows the trial court to accept agreed dissolution orders based on a declaration rather than testimony. LCR 4.1(a). LCR 4.1(a) provides,

> When a party is represented by an attorney, a declaration will be accepted in lieu of testimony in cases in which parties have stipulated to entry or in default cases in which the relief requested is the same as the relief requested in the Petition for dissolution. . . . The declaration in lieu of testimony must be made after the expiration of the ninety (90) day period.

1.     Irregularity under RCW 26.09.030

Wendy argues that signing the dissolution orders before the expiration of the 90-day waiting period stated in RCW 26.09.030 resulted in rushed, arbitrary, and unfair proceedings. Wendy also argues that signing the orders was improper because she disputed that the marriage was irretrievably broken at the time that the dissolution orders were signed. We are not persuaded by these arguments.

RCW 26.09.030 governs what the trial court is required to do after the 90-day waiting period has passed; it does not govern when the parties may or may not sign the relevant orders.

*See* RCW 26.09.030 ("when ninety days have elapsed since the petition was filed . . . *the court shall proceed as follows*") (emphasis added).  Because the trial court did not enter the dissolution orders until after the 90 days had passed there was no irregularity based on RCW 26.09.030.

Furthermore, even if Wendy had doubts or did not believe the marriage was irretrievably broken, she does not dispute that she signed orders that stated the marriage was irretrievably broken.  And she made no attempt to communicate to the trial court that she had changed her mind.  Because the trial court had orders, signed by both parties, that stated the marriage was irretrievably broken, there was no irregularity in the trial court entering the orders.  Therefore, Wendy has failed to establish there was any irregularity in entering the dissolution orders based on RCW 26.09.030.

2.      Irregularity under LCR 4.1(a)

Wendy also argues that because David signed the declaration in lieu of testimony before the expiration of the 90 day period, there was an irregularity under LCR 4.1(a).  But Wendy has not shown that the trial court abused its discretion by denying her motion to vacate the dissolution orders based on irregularities in David's declaration under LCR 4.1(a).

Wendy asserts that the rule requires that the declaration be *signed* after the expiration of the 90 day period.  David argues that LCR 4.1(a) requires that the declaration not be *filed* until after the expiration of the 90 day period.  LCR 4.1(a) actually requires that the declaration be "*made* after the expiration of the ninety (90) day period." (Emphasis added).  The trial court found that there may be some ambiguity in the rule about whether the declaration was made when it was signed or when it was filed, but because the declaration was not filed until after the expiration of the 90 day period any irregularity in the date it was signed was not an irregularity that warranted vacating the dissolution orders.

We review interpretation of a court rule de novo. *In re Marriage of McCann*, 4 Wn. App. 2d 896, 908, 424 P.3d 234 (2018). And we review the interpretation of a court rule in the same manner as we review statutes. *North Coast Elec. Co. v. Signal Elec., Inc.*, 193 Wn. App. 566, 571, 373 P.3d 296 (2016). The primary purpose of statutory interpretation is to determine and enforce the drafter's intent. *Winters v. Ingersoll*, 11 Wn. App. 2d 935, 947, 456 P.3d 862 (2020). When the meaning of language is plain on its face, we must give effect to that plain meaning. *Id.* "We may use dictionaries to discern the plain meaning of terms with 'well-accepted, ordinary' meanings." *Id.* (quoting *State v. Alvarado*, 164 Wn.2d 556, 562, 192 P.3d 345 (2008)).

"Made" is the past tense of "make." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1356 (1993). Some definitions of "make" include "to execute in an appropriate manner: draw up," "to bring about," and "to cause to exist, occur, or appear: bring to pass: create, cause." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1363.

Based on the dictionary definitions, the declaration in lieu of testimony was "made" when David executed or created it. Because the declaration was prepared by David's attorney, it was "made" when David reviewed and signed it. Therefore, the declaration in lieu of testimony was "made" before the expiration of the 90-day period in violation of LCR 4.1(a). However, the trial court did not abuse its discretion by determining that this irregularity did not justify vacating the dissolution orders under CR 60(b)(1).

The trial court did not abuse its discretion by denying Wendy's CR 60(b)(1) motion because the fact that David made the declaration in lieu of testimony before the expiration of the 90-day period was not an irregularity sufficiently material to reverse. David's signing the declaration in lieu of testimony before the expiration of the 90-day period did not result in

improperly entered dissolution orders because none of the dissolution orders were entered until after the expiration of the 90-day period as required by RCW 26.09.030. Also, Wendy presented no evidence that she did not understand the value of the parties' assets or the consequences of the dissolution orders nor is there any evidence that David's signing the declaration before the 90 days caused Wendy to feel rushed. And, before entry of the dissolution orders, Wendy never contacted the court, an attorney, or David's attorneys to state that she changed her mind about the dissolution or the terms of the settlement. Therefore, Wendy has failed to establish that there was any irregularity warranting reversal of the dissolution orders based on LCR 4.1(a).

We hold that the trial court did not abuse it discretion by ruling that Wendy failed to establish an irregularity that warranted vacating the dissolution orders under CR 60(b)(1). Therefore, we affirm the trial court's denial of Wendy's motion to vacate the dissolution orders based on CR 60(b)(1).

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

## ADDITIONAL FACTS

On March 20, 2018, before the filing of the petition for dissolution, Wendy was admitted to the hospital for suicidal ideation and manic behavior. The next day Wendy was transferred to a behavioral health hospital. Wendy was released from the hospital on April 4. Shortly after her release, Wendy moved out of the family home and into an apartment.

Earlier, in 2017, Wendy had taken a leave of absence from her position with the Federal Bureau of Investigation (FBI). In January 19, 2018, Wendy was evaluated by a psychologist and

a psychiatrist to return to work. On March 14, the FBI sent Wendy a letter informing her she was cleared to return to work part-time for three months before transitioning to full-time work. On April 26, the FBI interviewed Wendy regarding her returning to work. David was present at the interview and stated that Wendy was "calm, clear, and thoughtful" during the interview. CP at 321. Wendy expressed a desire to return to work on April 30. However, shortly after, Wendy told David she was taking time off work because of a leg injury. David learned later that Wendy never returned to work and her employment with the FBI was later terminated in November 2018.

On May 15, 2018, after the stipulated interim orders were entered, the parties filed an agreed parenting plan and child support order. Both orders were designated as final orders, and both parties signed the orders on May 14, 2018. The parenting plan gave primary residential custody to David and limited Wendy's parenting time to two hours once per week because Wendy "has a long-term emotional or physical problem that gets in the way of his/her ability to parent." CP at 23. The child support order imputed an income of $1,993 to Wendy and identified that her standard child support obligation would be $394. However, the child support order reduced Wendy's actual child support obligation to $0 because Wendy "will be covering counseling costs for the child pursuant to the parenting plan." CP at 32.

On July 1, Wendy and David got in an altercation while Wendy was at the family home. Wendy was arrested for third degree malicious mischief, second degree criminal trespass, harassment, and obstructing law enforcement. During the criminal case, Wendy had a competency evaluation at Western State Hospital. On July 20, Wendy's criminal attorney informed David's attorney that Wendy had been found competent in the criminal case.

The trial court in the dissolution matter entered findings and conclusions on July 25. The court found that the division of real and separate property was "fair (just and equitable)." CP at 46. The court awarded David the family home; bank, retirement, investment, and cash accounts in his name; personal property in his possession; the 2016 Kia Sorrento; the family dogs; and his firearms. The court awarded Wendy $84,136.75 as an offsetting judgment against the family home; the 2012 Subaru Impreza; any bank, retirement, investment, or cash accounts in her name; and her personal effects in her possession. David assumed the debts from any asset he was awarded, his personal debt, and any loan or credit card debt in his name. Wendy assumed any debt related to assets awarded to her, her personal debt, and the debt on two credit cards in her name.

In her motion for relief from judgment seeking to vacate the dissolution orders, Wendy also argued that the dissolution orders should be vacated under CR 60(b)(2), (4), and (11). Under CR 60(b)(2), Wendy argued that she suffered from long term mental health issues and that she was of unsound mind. In support of her motion, Wendy stated, "I did not read the documents I was asked by Petitioner to sign and did not understand the ramifications of my actions." CP at 67.

In support of her argument under CR 60(b)(4)—fraud, misrepresentation, or misconduct—Wendy argued,

> [David] knew or should have known that I did not understand the nature of the matter, could not . . . form an appropriate/effective attorney-client relationship and was unable to assist in binding negotiations or settlement. Instead [David] used my incapacity against me and erroneously obtained a disparate settlement that impoverishes me.

CP at 68.

Wendy also made three arguments as to why the dissolution orders should be vacated under the catch-all provision of CR 60(b)(11). First, Wendy argued that the child support order was void

against public policy, although she did not raise this under CR 60(b)(5)—void orders. Second, Wendy argued that David failed to file a financial declaration with the dissolution orders and, as a result, the trial court could not determine the fairness of the property division. Third, Wendy argued that the property was disparate in David's favor and she should have received an award of spousal maintenance.

Wendy also requested attorney fees for pursuing her motion to vacate. She argued that she was unemployed and did not have an income. Wendy contended that because David was awarded the bulk of their assets and his net income was more than $6,600 a month, David had the ability to contribute to her attorney fees.

In its ruling denying Wendy's motion to vacate, the trial court noted that Wendy's arguments under CR 60(b)(2) and CR 60(b)(4) related to her mental health at the time the orders were signed; specifically that her mental health "left her incapacitated to execute the documents" under CR 60(b)(2) and that David "knowingly took advantage of her incapacity to gain her consent" under CR 60(b)(4). CP at 385-86. As to these arguments, trial court ruled,

> Although the Respondent established that she had a pre-existing diagnosis of mental health disorders which impacted her employment and required treatment, including hospitalization, she failed to establish clear, cogent, and convincing evidence that she was unable to make decisions and that her mental condition deprived her of the ability to comprehend the orders.

CP at 386 (footnote omitted).

The trial court also ruled that "[a]lthough [Wendy] has asserted a variety of reasons to set aside the final orders based on CR 60(b)(11), none of the reasons provide an adequate basis for [Wendy's] requested relief." CP at 386. The trial court's ruling was based on several findings. First, the trial court found that, even if there was a basis for vacating the child support order, that

basis would not apply to the other dissolution orders. Second, the trial court found that the lack of financial declarations was not a basis to vacate the dissolution orders because the "parties had both signed the final orders and [David's] Declaration in Support of Entry identified that the proposed division of assets was fair and equitable." CP at 387. Third, the trial court found that the property division was not a basis to vacate the orders when the parties agreed to the provisions in the final orders and Wendy did not request maintenance. The trial court further found that vacation of the orders was not warranted "[u]nder the circumstances of this case" and "especially where [Wendy] acted upon and benefited from the final orders subsequent to signing them." CP at 387. The trial court denied Wendy's motion to vacate.

The trial court also denied Wendy's request for attorney fees. The trial court found that an award of attorney fees was not appropriate and that each party should pay their own attorney fees.

ANALYSIS

A.    UNSOUND MIND

Wendy argues that the trial court abused its discretion under CR 60(b)(2) by denying her motions because she was of unsound mind. Specifically, Wendy contends that her mental health prevented her from understanding the consequences of the agreement due to her apathetic responses to situations. Because Wendy did not meet her burden to establish of unsound mind to justify vacating the dissolution orders, we hold that the trial court did not abuse its discretion in denying her motions.

CR 60(b)(2) allows relief from judgment "[f]or erroneous proceedings against a minor or person of unsound mind, when the condition of such defendant does not appear in the record, nor the error in the proceedings." The phrase "unsound mind" is not defined in CR 60; however, it is

used in the witness competency statute, RCW 5.60.050, and the witness competency rule, CrR 6.12(c).  As used in the witness competency statute and rule, our Supreme Court has determined that "unsound mind" "means total lack of comprehension or the inability to distinguish between right and wrong."[5]  *State v. Smith*, 97 Wn.2d 801, 803, 650 P.2d 201 (1982).  Because nothing in CR 60(b) indicates an intention to have a different meaning of "unsound mind," we apply the definition recognized by our Supreme Court.

Here, although the record establishes that Wendy did suffer from mental health issues and had been hospitalized before the dissolution proceedings, nothing in the record establishes that Wendy's mental health issues caused a total lack of comprehension.  Simply being apathetic toward serious situations, does not establish that Wendy lacked total comprehension of the orders she was signing or the judgments that would be entered in the dissolution proceedings.  Wendy has not argued, either here or at the trial court below, that her mental health issues caused a total lack of comprehension or prevented her from knowing right or wrong, which is the applicable standard for establishing unsound mind under CR 60(b)(2).

The only evidence of the *effect* of her mental health conditions on Wendy's comprehension are the FBI evaluation, which cleared Wendy to return to work, and the criminal court's competency finding immediately before entry of the dissolution orders.  Wendy failed to present any expert evaluations or other expert testimony establishing that she was of unsound mind when she agreed to the dissolution settlement or when the dissolution orders were entered.  Therefore,

---

[5]  In her briefing, Wendy argues that the standard for competence to contract should govern here, but this is incorrect.  CR 60 motions examine the circumstances of the judgment, not the merits of the underlying case.  *See Lindgren*, 58 Wn. App. at 596.  Therefore, we apply the standard for motions to vacate judgments under CR 60(b)(2) and not the standard for capacity to contract.

the trial court did not abuse its discretion in determining that Wendy had failed to meet her burden to establish grounds to vacate under CR 60(b)(2).

B.     FRAUD OR MISCONDUCT

Wendy argues that David misrepresented that value of the property distributed pursuant to the agreed orders by failing to disclose the value of the property at issue. Wendy also argues that David obtained her agreement to the dissolution orders through undue influence. Therefore, Wendy asserts, the trial court abused its discretion by denying her motion to vacate under CR 60(b)(4).

CR 60(b)(4) allows for relief from judgment for fraud, misrepresentation, or other misconduct of an adverse party. However, "the fraudulent conduct or misrepresentation must *cause* the entry of the judgment such that the losing party was prevented from fully and fairly presenting its case or defense." *Lindgren*, 58 Wn. App. at 596. "Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." RESTATEMENT (SECOND) OF CONTRACTS §177(1) (1981); *In re Estate of Jones*, 170 Wn. App. 594, 606, 287 P.3d 610 (2012). The party attacking the judgment must establish fraud or undue influence by clear, cogent, and convincing evidence. *Lindgren*, 58 Wn. App. at 596.

Here, Wendy did not allege or bring forth any evidence that David hid or misrepresented the value of any of the parties' assets during the dissolution. She did not even allege that she did not know the value of the parties' assets when she signed the dissolution orders. Because Wendy was moving to vacate the dissolution orders, she bore the burden of proving David's fraud or

14

misconduct by clear, cogent, and convincing evidence. *Lindgren*, 58 Wn. App. at 596. Wendy failed to meet her burden. Thus, the trial court did not abuse its discretion by determining that Wendy had failed to meet her burden to prove the dissolution orders should be vacated under CR 60(b)(4).

C.     OTHER REASONS ALLEGED TO JUSTIFY RELIEF

Wendy argues that the circumstances surrounding the signing of the dissolution orders "smacked of bad faith" and "were such 'extraordinary or unusual circumstances' that the trial court erred in refusing to vacate the orders under CR 60(b)(11)." Br. of Appellant at 25 (quoting *Yearout v. Yearout*, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)).[6] Specifically, Wendy points to her psychological state, lack of representation, timing of the orders, and David's lack of disclosure as circumstances that justify vacating the order. Although most of these circumstances fall within the other provisions of CR 60(b) discussed above, Wendy appears to argue that the totality of these circumstances justifies vacating the dissolution orders under CR 60(b)(11). Because Wendy did not make this argument at the trial court, we do not consider it on appeal.

CR 60(b)(11) is a catchall provision that allows the trial court to grant relief from judgment for "[a]ny other reason justifying relief from the operation of the judgment." However, vacation

---

[6] It is unclear what Wendy is quoting here. The quoted phrase "extraordinary or unusual circumstances" does not appear in *Yearout*, although the discussion of CR 60(b)(11) notes that use of CR 60(b)(11) is limited to extraordinary circumstances not covered by other parts of the rule and stressed the need for the presence of unusual circumstances. 41 Wn. App. at 902. More importantly, *Yearout* does not support Wendy's assertion that the circumstances here are extraordinary or unusual circumstances. *Yearout* held, "In this case, Mr. Yearout's complaints as to the separation agreement's unfairness and his allegedly unstable emotional condition at the time of the original decree *do not* constitute extraordinary circumstances that would justify relief under CR 60(b)(11)." *Yearout*, 41 Wn. App. at 902 (emphasis added). This holding is contrary to Wendy's position.

15

of judgments under CR 60(b)(11) "should be reserved for situations involving extraordinary circumstances not covered by any other section of CR 60(b)." *In re Marriage of Furrow*, 115 Wn. App. 661, 673, 63 P.3d 821 (2003). Circumstances justifying relief under CR 60(b)(11) "must relate to 'irregularities extraneous to the action of the court or questions concerning the regularity of the court's proceedings.'" *Id*. at 674 (quoting *Yearout*, 41 Wn. App. at 902). Errors of law are not irregularities that justify vacation of the judgment under CR 60(b)(11). *Id.*

Below, Wendy made three discrete arguments that the dissolution orders should be vacated under CR 60(b)(11): the child support order was void as against public policy, the court could not make a determination regarding the fairness of the property distribution without financial declarations, and the property distribution was unfairly skewed in David's favor and did not include an award of spousal maintenance. Wendy did not argue that the totality of the circumstances justified vacating the orders under CR 60(b)(11).

We may refuse to review any claimed error that was not raised in the trial court. RAP 2.5(a). Therefore, because this alleged error is being raised for the first time on appeal, we do not consider it.

D.     ATTORNEY FEES IN THE TRIAL COURT

Finally, Wendy argues that the trial court abused its discretion by denying her request for attorney fees. Wendy argues that she should have been awarded attorney fees because she was unemployed and had continuing mental health concerns, while David earned nearly $7,000 a month and was awarded more assets in the property division.

RCW 26.09.140 provides,

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

We review decisions to award attorney fees under RCW 26.09.140 for an abuse of discretion. *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). We will affirm the trial court's decision unless its decision was "based on untenable grounds or untenable reasons." *Id*.

At the trial court, Wendy argued that she should be awarded attorney fees based on the disparity of the income between the parties. But her argument did not take into account the disparity of expenses between the parties. Nor did it take into account that Wendy received a lump sum cash payment in the settlement, while David is fully responsible for the costs associated with the family home and the couple's daughter. Here, the record fails to show that the trial court abused its discretion when it denied Wendy's request for attorney fees. *Id*. Accordingly, we affirm the trial court's ruling denying Wendy's request for attorney fees.

ATTORNEY FEES ON APPEAL

RAP 18.1(a) provides that this court may grant attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court." And under RCW 20.09.140, we have the discretion to grant attorney fees on appeal. "Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW 26.09.140. An award of attorney fees under RCW 26.09.140 is based on consideration of "'the parties' relative ability to pay' and 'the arguable merit of the issues raised

17

on appeal.'" *In re Marriage of Muhammed*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005) (quoting *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998)).

The financial affidavits filed by both parties demonstrate that neither party has a higher ability to pay attorney fees than the other. Although David has a higher income, his financial declaration demonstrates that he also has significantly higher living expenses, including almost all the living expenses for their daughter (excluding the counseling that Wendy pays for). Based on the parties' financial declarations, neither party appears to have the ability to pay attorney fees. Wendy is not entitled to the relief requested, and we deny Wendy's request for attorney fees on appeal.

## CONCLUSION

The trial court did not abuse its discretion when it denied Wendy's attempt to vacate the dissolution orders; therefore, we affirm the trial court's order denying Wendy's motion for relief from judgment. We also affirm the trial court's order denying Wendy's request for attorney fees and deny Wendy's request for attorney fees on appeal.

Lee, C.J.

We concur:

Worswick, J.

Glasgow, J.